**In re CORNWALL HILL REALTY, INC., Debtor.**

**Bankruptcy No. 91 B 20556.**

United States Bankruptcy Court, S.D. New York.

June 28, 1991.

Certilman, Balin, Adler & Hyman (Michael D. Brofman, of counsel), East Meadow, N.Y., for debtor.

Maniatis & Lombardi, Scarsdale, N.Y., for Lori–Kay Management Corp.

## DECISION ON MOTION FOR AN ORDER REJECTING EXECUTORY CONTRACT

### HOWARD SCHWARTZBERG, Bankruptcy Judge

The Chapter 11 debtor, Cornwall Hill Realty, Inc. ("Cornwall") has moved pursuant to 11 U.S.C. § 365(a) to reject a consulting and management contract between Cornwall and Lori–Kay Management Corp. ("Lori–Kay") with respect to real estate in Putnam County, New York. Lori–Kay opposes the debtor's proposed rejection on the ground that the agreement between the parties is not an executory contract.

### FINDINGS OF FACT

1. The debtor, Cornwall, filed with this court its petition for reorganizational relief under Chapter 11 of the Bankruptcy Code on April 18, 1991, and continues in management and control of its property as a debtor in possession in accordance with 11 U.S.C. §§ 1107 and 1108.

2. Prior to filing for Chapter 11 relief, the debtor purchased a tract of real estate in Putnam County, New York ("the property") from James Cassia, the president and sole shareholder of Lori–Kay. The debtor purchased the property from Cassia for the purpose of subdividing the property and selling the subdivided lots. Cassia received from the debtor certain mortgages on the property in connection with the sale, subordinated to a first mortgage.

3. In conjunction with the sale of the property, the debtor entered into a consulting and management agreement with Lori–Kay, dated August 4, 1989, pursuant to which the debtor paid $150,000.00 to Lori–Kay. Additionally, the debtor agreed to pay to Lori–Kay specific amounts, depending upon how many lots are sold and the selling price of each lot. If the debtor should sell the entire tract of real estate before subdividing the lots, the debtor is required to pay a specific amount to Lori–Kay, depending upon the selling price. Moreover, the contract provides a minimum additional sum of $175,000.00 which the debtor must pay to Lori–Kay by December 31, 1992, regardless of any sales by the debtor.

4. The contract specifically sets forth the duties of the parties as follows:

LORI–KAY shall devote such time and attention and employ such agents, servants and employees *as it considers proper* and necessary to act in the capacity of consultant and/or supervisory managing agent for the purpose of developing the aforesaid premises at Cornwall Hill Road, Town of Patterson, County of Putnam, State of New York. To said extent, LORI–KAY, shall, *if it deems it appropriate,* meet with and confer with any and all public officials so as to obtain subdivision approval for the subject premises and to obtain a maximum amount of building lots for the subject premises. LORI–KAY hereby accepts this undertaking for the purpose of the advancement, protection and preservation of the interest of CORNWALL in and to such properties. LORI–KAY shall employ such personnel as are required in order to obtain the foregoing and shall pay all such salaries, wages, taxes, premiums and charges for worker's compensation insurance and any and

all other necessary expenses, and shall not be entitled to reimbursement for any such amounts so incurred or paid by LORI–KAY from CORNWALL. To said extent LORI–KAY shall take any other action, not specifically prohibited or limited by this agreement or by law or administrative enactment, which may be required in the judgment of LORI–KAY in order to obtain the maximum benefits from such properties. (Emphasis added).

5. It is clear that the contract imposes specific obligations on the debtor to use its best efforts to obtain a subdivision of the property which Lori–Kay's principal sold to the debtor and to pay Lori–Kay specific amounts, depending on whether or not the property is subdivided, but in no event less than $175,000.00. However, any time and attention which Lori–Kay may devote to the unspecified functions under the contract are totally discretionary with Lori–Kay. Lori–Kay may devote such time and attention "as it considers proper and necessary." Moreover, Lori–Kay may meet with public officials to obtain subdivision approval and maximize approved building lots at its discretion, "if it deems it appropriate."

6. James D'Iorio, the president of the debtor, testified that Lori–Kay did not perform any services under the contract in question. He is presently negotiating to sell the property, although no subdivision approval has been obtained. He believes that the administrative expense status of any payment to Lori–Kay under the consulting and management contract will have a chilling effect upon any potential sale of the property. There was no evidence that the debtor ever requested Lori–Kay to perform any services under the consulting and management contract.

7. James Cassia, the president and sole shareholder of Lori–Kay testified that he is a resident of Florida and the vendor of the property purchased by the debtor. He said that after he received $150,000.00 under the contract in question in conjunction with his sale of the property to the debtor, he was never requested by the debtor or any of its agents to perform any services under the contract or to give any consultation advice.

8. It is evident upon reading the contract that the intention of the parties was to provide James Cassia with additional selling revenue if the tract of land which he sold to the debtor could be subdivided and if individual lots could be sold off. In any event, the contract guaranteed Cassia, through his wholly-owned corporation, Lori–Kay, an additional $150,000.00 at the closing and an extra minimum $175,000.00, even if no subdivision or sale of the property occurred. The duty of "consultant and/or supervisory managing agent" was sheer window dressing because the debtor had total possession and supervisory authority with respect to the property. This point is made clear in paragraph 3 of the contract which strips Lori–Kay of any managerial authority in the following words:

LORI–KAY shall not be entitled to act as agent on behalf of CORNWALL and shall not be authorized to legally obligate and/or bind CORNWALL to any agreements, obligations, claims, etc.; and in the event LORI–KAY shall so bind CORNWALL, then and in that event, LORI–KAY shall indemnify CORNWALL for any damages incurred with respect thereto. To said extent it is expressly understood and agreed that LORI–KAY is an independent contractor and shall make no representations to any third parties that it is authorized to act on behalf of or bind CORNWALL with respect to any obligations, contracts, agreements, etc.

Thus, when viewed in the context of the original sale of the property by Cassia to the debtor, the so-called consulting agreement was basically an amendment to the original contract of sale, transforming the entire transaction between the parties into an installment sales contract, with the purchase price varying as each lot is sold off, but containing a minimum fixed price even if no subdivision is permitted.

9. The consulting aspect of the contract was also drained of any significance because LORI–KAY could decide, in its own discretion, how much time and attention, if

any, it considered necessary to act as a consultant. Any meetings or conferences with public officials to push the debtor's subdivision plan were completely conditioned upon "if [Lori–Kay] deems it appropriate ..." It is apparent that Lori–Kay was given standing to protect its secured interest in the property and its contingent interest in sales of subdivided lots which would enhance the ultimate price which Cassia and his corporation, Lori–Kay, would receive for the sale of the tract of land to the debtor. Lori–Kay's status as a consultant and/or managing agent [without any management authority] was for Lori–Kay's benefit.

## DISCUSSION

■ The courts have generally defined executory contracts as contracts where performance is due to some extent on both sides, so that the failure of either party to complete performance would constitute a material breach, excusing the performance of the other party. *See e.g., NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482, 493 n. 6 (1984). *See* S.Rep. 989, 95th Cong.2d Sess. 58 (1978) and H.Rep. 595, 95th Cong. 1st Sess. 347 (1977), U.S.Code Cong. & Admin.News 1978, p. 5787. Generally the performance on both sides must be significant. *In re RLR Celestial Homes, Inc.*, 108 B.R. 36, 44 (Bankr.S.D.N.Y.1989).

■ In the instant case, Lori–Kay has not been asked to perform any consulting or managing services and may not perform managerial services without the debtor's permission. There was no evidence that the debtor contemplated that Lori–Kay would perform any consulting or managing services, especially since James Cassia, the president and sole shareholder of Lori–Kay, is a resident of Florida, whereas the property in question is located in New York. Indeed, the debtor never requested Lori–Kay to perform any services and is now negotiating to sell the entire tract of land without obtaining governmental approval for subdividing the property. The contract provided for consultation by Lori–

Kay, in its discretion, in furtherance of the debtor's efforts to subdivide the property. Essentially, as the former owner and a current mortgagee, and as a party with a right to receive additional revenue if the property is subdivided, Lori–Kay was given standing under the contract to meet with public officers in order to push for subdivision authority. This status was a positive benefit to Lori–Kay in furtherance of its continued economic interest in the property and was not a burden or duty to be performed by Lori–Kay, even if, in its discretion, it chose not to perform any consulting services.

In sum, Lori–Kay had no further obligations to perform under the contract. It could consult with public officials, even if not so requested by the debtor. However, Lori–Kay could not be compelled to allocate any time to perform consulting services under the contract if, in its discretion, it determined not to do so, or that such consultation was not appropriate. The debtor recognized that Lori–Kay was not required to perform any services under the contract and, therefore, never requested Lori–Kay to do anything. Because Lori–Kay was not required to perform any services under the contract in order to be entitled to receive the additional revenues or the minimum payment called for under the contract, it follows that the contract was not executory and may not be rejected by the debtor. *See Marcus & Millichap Inc. of San Francisco v. Munple Ltd. (In re Munple Ltd.)*, 868 F.2d 1129 (9th Cir.1989). If at the filing of the petition, all that remains to be performed under the contract is the obligation to pay money, the contract is not executory and may not be rejected. *Indian River Homes, Inc. v. Sussex Trust Co.*, 108 B.R. 46, 56 (D.Del 1989).

■ It should be noted that the denial of the debtor's motion to reject the contract with Lori–Kay does not improve Lori–Kay's position. Under 11 U.S.C. § 365(g), the rejection of an executory contract gives rise to a prepetition claim because rejection is regarded as a breach of such contract immediately before the date of the filing of the petition. On the other hand, a contract

that is not executory and may not be rejected, is also nonassumable. Therefore, should the debtor subsequently obtain authority to subdivide the property and sell off individual lots, Lori–Kay could not claim that the contract was an assumed post-petition contract with respect to which it is entitled to an administration expense claim. Because this court agrees with Lori–Kay that the contract in question is not executory, Lori–Kay simply holds an unsecured, fixed claim as of the date of the filing of the petition for a minimum of $175,000.00, as expressed in the contract, and a contingent claim for additional amounts if the debtor sells the property, or if the debtor subdivides the property and sells off additional lots. This is so because bankruptcy operates as the acceleration of the amount of all claims against a debtor. *In re Texaco,* 73 B.R. 960, 965 (Bankr.S.D. N.Y.1987); *In Re Manville Forest Products Corp.,* 43 B.R. 293, 297–298 (Bankr.S. D.N.Y.1984), *aff'd* in part and *rev'd* in part, 60 B.R. 403 (S.D.N.Y.1986).

> Since the consulting fee claim was accelerated prior to the filing of the bankruptcy petition, it is a prepetition claim in the bankruptcy case. Thus, acceleration of the consulting fee obligation accomplished what the debtor sought to accomplish by rejecting the consulting fee agreement. Therefore, there was no need for the debtor to reject the consultation agreement to convert the consulting fee debt to a prepetition obligation.

*Matter of Executive Technology Data Systems,* 79 B.R. 276, 282 (Bankr.E.D.Mich. 1987).

In the instant case, there was no need for the debtor to seek to reject the consultation agreement with Lori–Kay because even when rejected, Lori–Kay's contract claim is a prepetition claim and not a post-petition administration expense claim.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The contract between the debtor and Lori–Kay is not an executory contract and may not be rejected by the debtor pursuant to 11 U.S.C. § 365(a) because Lori–Kay has no further duty to perform under the contract.

3. The debtor's motion to reject the contract as an executory contract is denied.

SETTLE ORDER on notice.