**In re Herman Lloyd SPENCER, d/b/a Spencer's 1890 Beef House Restaurant, Debtor.**

**Bankruptcy No. 89–4145–BKC–3P7.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

April 21, 1992.

David M. Lopez, Ocala, Fla., for debtor.

Gregory K. Crews, Jacksonville, Fla., trustee.

Chester J. Trow, Ocala, Fla., for claimants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came to be heard upon Trustee's Objection to Claim Number 13 filed by Clay N. Parker and Okie W. Lanier ("Claimants") and the Application of Clay N. Parker and Okie W. Lanier for a Chapter 11 Administration Expense. Hearings were held on November 13, 1991, and March 5, 1992. Upon the evidence presented, the Court makes the following Findings of Fact and Conclusions of Law:

### Findings of Fact

On July 9, 1982, Claimants, as tenants, entered into a lease with debtor and his wife regarding commercial property in Ocala, Florida.

The lease was still in force when debtor filed a voluntary petition under chapter 11 on December 28, 1989.

On January 31, 1990, the City of Ocala began an investigation regarding violations of city building codes on the leased property. The investigation led to the issuance of a Notice of Eviction dated April 23, 1990, and Claimants left the property on April 24, 1990. Debtor formally terminated the lease in writing on April 24, 1990.

Claimants operated a retail fresh fish business on the leased premises. The business had been profitable, producing income and benefits to the Claimants of $31,200.00 in cash and $15,600.00 in food during the twelve months prior to the eviction. In addition, Claimants used business proceeds to pay $7,300.00 in truck payments, $9,200.00 in oil, gas, and insurance on the trucks, $240.00 for scale maintenance, and $1,920.00 for ice machines.

As a result of the Notice of Eviction, the Claimants' business ceased operations and they incurred $1,300.00 in shut down costs, as well as $2,000.00 in lost inventory.

On August 6, 1990, no plan having been confirmed, the case was converted to chapter 7. The order, in paragraph 3, provided as follows:

All applications for administrative fees and expenses for parties other than the trustee must be filed on or before September 5, 1990;

During the pendency of the chapter 11 case, debtor did not assume or reject the lease pursuant to § 365.

On August 2, 1990, Claimants filed an unsecured claim (claim number 13) for $125,438.41 based upon breach of the lease.

Based upon the same breach and damages, Claimants filed an Application for Allowance of Priority Administrative Expense on January 21, 1992. The application asserted that the earlier claim was entitled to be accorded chapter 11 administrative priority because the breach occurred while the chapter 11 case was still pending.

The evidence indicates that in Marion County the general guideline for valuing small businesses in which the managers personally work is to base the fair market value on one year's net income and benefits to the owners.

No evidence of mitigation of damages was demonstrated by either party.

The issues before the Court involve a determination of the amount of damages flowing from the untimely termination of the lease and whether such damages are entitled to a chapter 11 administrative expense priority under § 503(b).

### Conclusions of Law

The allowance of administrative expenses is governed by section 503 which reads in relevant part:

(b) After notice and a hearing, there shall be allowed administrative expenses, ... including—

(1) (A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for

services rendered after the commencement of the case; ....

■ The Eleventh Circuit considered administrative expenses in *In re Subscription Television of Greater Atlanta*, 789 F.2d 1530 (11th Cir.1986), stating:

> The priority of an administrative expense is the highest. 11 U.S.C. Section 507(a)(1). The allowance of such a priority is to be carefully considered, only after notice and hearing. 11 U.S.C. Section 503(b). That which is actually utilized by a trustee in the operation of a debtor's business is a necessary cost and expense of preserving the estate and should be accorded the priority of an administrative expense. That which is thought to have some potential benefit, in that it makes a business more salable, may be a benefit but is too speculative to be allowed as an "actual, necessary cost and expense of preserving the estate."

789 F.2d at 1532. Accordingly, in order to be granted administrative priority, the expense must have provided a definite benefit to the estate. *Grantham v. Eastern Marine, Inc.*, 93 B.R. 752, 753–54 (Bankr. N.D.Fla.1988); *In re O.P.M. Leasing Services, Inc.*, 23 B.R. 104, 121 (Bankr. S.D.N.Y.1982).

■ When a lease is assumed during the pendency of a chapter 11 case which is later converted to chapter 7, the lease is considered to have been a benefit to the estate. Accordingly, damages flowing from a breach are entitled to administrative expense priority. *In re Florida Airlines, Inc.*, 73 B.R. 64, 66 (Bankr.M.D.Fla.1987); *In re Multech Corp.*, 47 B.R. 747 (Bankr. N.D.Iowa 1985).

■ In the instant case, the lease was not assumed during the chapter 11 case. The eviction and termination of the lease by debtor constituted a breach, but not a breach of an *assumed* lease. Assumption of a lease cannot be implied, it requires specific court approval. 11 U.S.C. § 365(a); F.R.B.P. 6006; *In re Florida Airlines, Inc.*, 73 B.R. at 66.

■ When a lease is not assumed prior to confirmation, a breach of such lease is considered to have occurred pre-petition and is entitled to treatment as a § 502(g) claim, rather than as a § 503(b) administrative claim. *In re Airlift International, Inc.*, 761 F.2d 1503, 1509 (11th Cir.1985).

Based on the foregoing, this Court did not approve an assumption of the lease and, thus, the lease was not assumed. Because no assumption was made, the breach is deemed to have occurred pre-petition and any damages flowing from such breach are not entitled to administrative priority, but are considered a general unsecured claim.

■ The amount of the claim should be based on the value of the business when the breach occurred. The evidence establishes that the appropriate method for valuing this particular business is by measuring one year's net income and benefits to the owners. In this case, the fish store produced $31,200.00 in cash during the twelve months preceding the eviction. In addition, the owners received $15,600.00 in food for their personal use. Thus, the net income and benefits to Claimants totalled $46,800.00.

The other benefits claimed, such as truck, oil, gas, and insurance payments, scale maintenance, and ice machine payments, were all costs of conducting business, rather than benefits of the Claimants personally. Accordingly, such amounts should not be included in valuing the business.

■ In addition to the value of the business, Claimants are entitled to recover the $1,300.00 in shut down costs and the $2,000.00 in lost inventory as damages.

A separate Order denying the application for chapter 11 administrative expense and allowing a general unsecured claim of $50,-100.00 to Claimants will be entered.