**In re CHILD WORLD, INC., Debtor.**

**Bankruptcy No. 92 B 20887.**

United States Bankruptcy Court,
S.D. New York.

Oct. 30, 1992.

Weil, Gotshal & Manges, New York City, for debtor.

Patterson, Belknap, Webb & Tyler, New York City, for The Unofficial Employees' Committee of Child World, Inc.

O'Melveny & Myers, New York City, for the Banks Citicorp Center.

Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for Creditors' Committee.

## DECISION ON MOTION FOR ORDER AUTHORIZING REJECTION OF CERTAIN CONTRACTS

HOWARD SCHWARTZBERG,
Bankruptcy Judge.

The debtor in this case, Child World, Inc., seeks to reject, pursuant to 11 U.S.C. § 365(a), twenty-two employment contracts with some of its key employees whose employment was previously terminated by the debtor during the post-Chapter 11 period and after the debtor decided to liquidate its business. The debtor's admitted objective is to take advantage of 11 U.S.C. § 365(g)(1), which characterizes claims arising under a post-petition rejection as prepetition unsecured claims rather than post-petition administrative expenses. Additionally, the debtor maintains that even if rejection is disallowed, the termination of the employees' services should not give rise to an administrative claim for severance pay because the compensation called for under the contracts is not in the nature of severance pay.

The respondent, Herbert Hodus ("Hodus"), is one of the key employees whose contracts the debtor seeks to reject. He argues that the debtor may not reject an employment contract after the termination of his employment in the post-petition period and, even if rejection is allowed, the amount claimed due him and the other key employees represents severance pay which should be treated as an administrative expense priority for the full amount claimed pursuant to 11 U.S.C. § 503(b)(1).

## FINDINGS OF FACT

1. The debtor filed its voluntary petition for Chapter 11 relief with this court on May 6, 1992 and continues to operate its

business and manage its properties as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. The headquarters and executive offices of the debtor are located in Avon, Massachusetts. The debtor's principal asset is located in Scarsdale, New York, the site of the debtor's retail toy store with the highest sales volume.

3. Many of the debtor's key employees had written employment contracts with the debtor which provided, among other things, that in the event an employee's services were terminated without cause, that employee would receive, in settlement of any claims for compensation which the employee might have, the greater of three alternatives, so as to assure the employee a termination amount at least equal to a portion of the employee's base salary at the time of termination. The three alternatives, together with the employee's obligation to use best efforts to mitigate the amount due by obtaining suitable employment following such termination, are expressed in paragraph (e) in all the key employment contracts as follows:

(e) It is further understood and agreed that in the event my employment with the Company should be terminated by the Company without cause ("cause" for this purpose means gross neglect of duty, material breach of this Agreement, dishonesty, disloyalty, intoxication, drug addiction, or other misconduct adverse to the best interests of the Company), I will receive in full and complete settlement of any claims for compensation which I may have, the greater of:

(i) the amount of money which is payable in accordance with the Child World, Inc. Master Severance Plan for Key Employees in effect at the time of my termination; or

(ii) the amount of money, if any, which is payable in accordance with the Company's severance pay policy in effect at the time of my termination; or

(iii) a continuation of my base salary in effect at the time of the termination of my employment, for a period of twelve months immediately following such termination (the "Salary Continuation Period"), payable in accordance with the Company's payroll schedule; provided, however, that in the event I obtain employment during the Salary Continuation Period (and upon obtaining such employment I will promptly notify the Company of same), the payment of any unpaid balance hereunder, effective as of the date of such new employment, shall be:

(A) Cancelled if the annual base salary of my new employment equals or exceeds my annual base salary at the Company at the time of my termination; or

(B) Reduced to the amount by which my annual base salary at the Company at the time of my termination exceeds the annual base salary of my new employment prorated on the basis of the time remaining in the Salary Continuation Period. As used herein, "annual base salary of my new employment" shall equal the greater of (x) the actual annual base salary of my new employment or (y) the average annual base salary payable to persons holding comparable positions as I then do with my new employer with businesses comparable to my then-new employer.

It is the intent of this Paragraph (e) that I will be assured of the payment of an amount at least equal to my base salary at the time of my termination at the Company through the Salary Continuation Period, whether through payments from the Company, my new employer or a combination of payments from the Company and my new employer. I further agree to use my best efforts to obtain suitable employment following such termination.

4. Each key employee agreement expressly provides that it shall be governed and construed in accordance with the laws of the Commonwealth of Massachusetts.

5. Pursuant to each key employment contract, the employee agreed that upon termination, such employee would not compete with the debtor's business for twelve months following termination and would

not employ any of the debtor's employees. The key employee also agreed not to divulge or disclose to competitors the debtor's merchandising and business plans, trade secrets, or other confidential business data.

6. When the debtor filed its Chapter 11 petition it hoped to continue in business either under a restructuring of its operations or pursuant to a merger with another enterprise in the toy business. However, the debtor was unable to accomplish its objectives with the result that it decided to liquidate its business and close down all of its stores. It originally operated approximately 125 retail toy stores under the name "Child World" and "Children's Palace." As of the date of the petition, the debtor employed approximately 4800 people. The debtor anticipates that all work associated with the completion of its going out of business sales will be completed before the end of this month.

7. There is no dispute that all of the twenty-two employees who are parties to the debtor's key employee contracts have been fully paid as to salaries, vacation pay, sick pay and severance pay in accordance with the debtor's severance pay policy in effect when the debtor terminated the employment relationship with respondent Hodus, and the other terminated key employees. Indeed, some of the debtor's store managers were paid double and triple severance amounts.

8. The respondent, Hodus, has established that the amount of his base salary for a period of twelve months immediately following his termination on September 19, 1992 constitutes the greater of the three alternatives in paragraph (e) of his key employee contract with the debtor, dated February 8, 1991. Moreover, Hodus maintains that the amount of base salary constitutes additional severance pay as compensation for the post-petition termination of his employment by the debtor earned prior to such termination beyond that which he has already received. Therefore, Hodus contends that the full amount of his yearly base salary should be treated as severance pay and compensation for the post-petition termination of his employment, with the result that the entire amount of the claimed severance pay should be treated as an administrative expense priority pursuant to 11 U.S.C. § 503(b)(1).

9. The termination compensation in the key employees' contracts was intended by the debtor to induce the key employees to remain with the debtor during the course of the debtor's financial turbulence and to assure them of additional compensation should their services thereafter be terminated without cause. Additional inducements were also provided to key employees in the form of Going Out of Business Bonuses (GOB Bonuses). The GOB Bonuses are not in issue under this motion and will be dealt with at another time.

10. The debtor has concluded that the key employee contracts are onerous and burdensome to the debtor and its estate. Therefore, in the exercise of its business judgment, the debtor seeks authority pursuant to 11 U.S.C. § 365(a) to reject these contracts.

### DISCUSSION

Section 365(a) of the Bankruptcy Code governs the assumption or rejection of "any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The standard to be applied hinges on the exercise of the debtor's business judgment. *NLRB v. Bildisco and Bildisco*, 465 U.S. 513, 523, 104 S.Ct. 1188, 1194, 79 L.Ed.2d 482 (1984). The significance of a rejection of an unassumed executory contract is that under 11 U.S.C. § 365(g)(1), such rejection generally gives rise to a prepetition general unsecured claim for damages rather than an administrative expense priority. Although general unsecured claims are calculated in full, the payment of these claims, if at all, is made "in little tiny Bankruptcy Dollars, which may be worth only ten cents in U.S. dollars." Westbrook, *A Functional Analysis of Executory Contracts*, 74 Minn.L.Rev. 227, 253 (1989) (hereinafter *"Westbrook"*).

Unlike general unsecured claims, administrative expense claims are given priority under 11 U.S.C. § 503 and must be paid in

full before the general unsecured claims are paid. However, a post-petition rejection of an employment contract providing for severance pay constitutes compensation for termination and is accorded an administrative expense priority under 11 U.S.C. § 503(b)(1) as an actual and necessary expense of administering the debtor's estate. *In re Golden Distributors, Ltd.*, 134 B.R. 760 (Bankr.S.D.N.Y.1991), *aff'd, Metropolitan Distribution Services, Inc. v. Local 153 OPEIU (In re Golden Distributors, Ltd.)*, No. 92 Civ. 0368 (S.D.N.Y. July 27, 1992) (citing *Trustees of Amalgamated Insurance Fund v. McFarlin's Inc.*, 789 F.2d 98 (2d Cir.1986)). As Chief Judge Brieant said in his affirmance of this court's *Golden Distributors* decision:

> The severance pay for terminated employees likewise is a cost of carrying on business, and constitutes an administrative expense when the severance occurs post-petition. This is so, even if severance pay is calculated by formula according to an employees length of employment, including service which was primarily pre-petition.

*Metropolitan Distribution Services, Inc. v. Local 153 OPEIU (In re Golden Distributors, Ltd.)*, No. 92 Civ. 0368, slip op. at 4 (S.D.N.Y. July 27, 1992). Although the treatment of severance pay differs in other Circuits, *see In re Mammoth Mart, Inc.*, 536 F.2d 950 (1st Cir.1976), the rule in the Second Circuit has always been that a debtor's post-petition rejection of an executory contract for severance pay is a first priority administrative expense in its entirety because it is compensation for the event of termination and, unlike wages, does not accrue on a *per diem* basis. *In re W.T. Grant Co.*, 620 F.2d 319 (2d Cir.), *cert. denied*, 446 U.S. 983, 100 S.Ct. 2963, 64 L.Ed.2d 839 (1980); *In re Unishops, Inc.*, 553 F.2d 305 (2d Cir.1977); *Straus–Duparquet, Inc. v. Local Union No. 3*, 386 F.2d 649 (2d Cir.1967).

### Rejection

■ Not every contract may be assumed or rejected by a trustee or a debtor in possession. The Bankruptcy Code specifically limits this option under 11 U.S.C. § 365(a) to contracts that are "executory.": Under the traditional executoriness analysis, a contract is executory where the obligations of the debtor and the nondebtor are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other. Countryman, *Executory Contracts in Bankruptcy: Part I*, 57 Minn.L.Rev. 439 (1973); Countryman, *Executory Contracts in Bankruptcy: Part II*, 58 Minn.L.Rev. 479 (1974). This traditional test was rejected in *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 687 (Bankr.S.D.N.Y.1992), for the more flexible functional approach advocated by Professors Andrew and Westbrook in their articles on this subject. Andrew, *Executory Contracts Revisited: A Reply to Professor Westbrook*, 62 U.Colo.L.Rev. 1 (1991); *Westbrook, supra.* Under the functional approach the issue is not whether or not the contract is executory but rather whether or not the estate will benefit from the assumption or rejection of the contract. *Westbrook, supra,* at 282–83. Manifestly, this approach ignores the statutory requirement that the contract to be assumed or rejected must be "executory." The functional approach will clearly support the debtor's motion to reject the key employment contracts in that the estate will benefit by such rejection because such rejection is an attempt to maximize the value of the property of the estate and minimize the debtor's exposure for administrative expenses. *Drexel Burnham*, 138 B.R. at 713.

### Executoriness

■ In determining whether or not a contract is executory for purposes of assumption or rejection, consideration must be given first to the obligations of the parties at the time when the bankruptcy petition was filed rather than when the motion to assume or reject was made. *In re Coast Trading Co.*, 744 F.2d 686, 692 (9th Cir.1984); *In re Newcomb*, 744 F.2d 621, 624 (8th Cir.1984); *In re Cornwall Hill Realty, Inc.*, 128 B.R. 378, 381 (Bankr. S.D.N.Y.1991); *In re Bastian Co., Inc.*, 45

B.R. 717, 721–22 (Bankr.W.D.N.Y.1985). However, events after the filing of the bankruptcy petition may cause the contract to be regarded as not executory when the motion to assume or reject was made, such as contracts which expired post-petition by their own terms after the date of the petition but before the motion was heard. *Gloria Manufacturing Corp. v. International Ladies Garment Workers' Union,* 734 F.2d 1020 (4th Cir.1984); *In re Government Securities Corp.,* 101 B.R. 343 (Bankr.S.D.Fla.1989), *aff'd,* 972 F.2d 328 (11th Cir.1992); *In re Pesce Baking Co., Inc.,* 43 B.R. 949, 957 (Bankr.N.D.Ohio 1984). In the instant case, the key employee contracts were not only executory when the debtor's Chapter 11 petition was filed, but they were executory when the debtor's motion for rejection was heard. The debtor is obligated under the contracts to make salary continuation payments and the employees are required to release the debtor of all claims for compensation and to use their best efforts to seek suitable employment in mitigation of the compensation to which they are entitled.

■ Accordingly, applying either the traditional executoriness test or the so-called functional test, the debtor may reject the key employee contracts in the exercise of its business judgment. Such rejection will constitute an allowable claim for breach of contract. However, the debtor's rejection of the key employees' contracts does not mean that the obligations thereunder will evaporate. Rejection is not the equivalent of rescission because rejection under 11 U.S.C. § 365(a) simply means that the court will permit the debtor to breach the contract, with the result that the contractual obligations will be reduced to general unsecured claims for prepetition damages pursuant to 11 U.S.C. § 365(g)(1). *Drexel Burnham,* 138 B.R. at 711; *In re Rudaw/Empirical Software Products Ltd.,* 83 B.R. 241, 246 (Bankr.S.D.N.Y.1988). An exception to the prepetition status of the claims arises if the claim relates to a post-petition actual and necessary expense of administration, as expressed in 11 U.S.C. § 503(b)(1). Whether or not the key employees will have an administrative expense priority claim under 11 U.S.C. § 503(b)(1) requires a determination that the compensation called for under the contracts represents post-petition severance pay.

### Severance

Respondent Holdus continued in the debtor's employ for over four months after the Chapter 11 petition was filed on May 6, 1992. He maintains that the debtor's contractual key employees, including himself, accomplished spectacular results with respect to the debtor's Going Out of Business Sales, dramatically exceeding expectations. Accordingly, he reasons that his post-petition employment was exceedingly beneficial to the debtor and was consistent with the objectives of the key employee contract, namely to remain with the debtor and to assist with the administration of the debtor's business in exchange for an assured additional severance compensation upon termination of the employment without fault on the employee's part.

■ There is no question that had the debtor assumed the key employee contracts during the post-petition period, the compensation payable thereunder would be treated as actual and necessary administrative expenses pursuant to 11 U.S.C. § 503(b). However, an assumption of a contract cannot be implied because it requires specific court approval pursuant to a motion in accordance with Fed.R.Bankr.P. 6006. *Data–Link Systems, Inc. v. Whitcomb & Keller Mortgage Co., Inc. (In re Whitcomb & Keller Mortgage Co., Inc.),* 715 F.2d 375, 380 (7th Cir.1983); *In re Spencer,* 139 B.R. 562, 564 (Bankr.M.D.Fla.1992); *In re Curry Printers, Inc.,* 135 B.R. 564, 571 (Bankr. N.D.Ind.1991); *In re Uly–Pak, Inc.,* 128 B.R. 763, 765 (Bankr.S.D.Ill.1991).

■ In determining whether or not the provision in the key employee contract calling for wage continuations represent severance pay, reference must be made to Massachusetts law, because the key employee contracts specifically provide that the contracts are to be governed and construed in accordance with the laws of the Commonwealth of Massachusetts. The courts in

Massachusetts have defined severance pay as:

[A] payment to an employee at the time of his separation in recognition and consideration of the past services he has performed for the employer and the amount is usually based on the number of years of service.

*Bolta Products Division v. Director of the Division of Employment Security,* 356 Mass. 684, 255 N.E.2d 357, 360, 361 (1970).

In *Itek Corporation v. Director of the Division of Employment Security,* 398 Mass. 682, 500 N.E.2d 1309 (1986), the court held that an employer's wage continuation obligation upon termination without cause was not the equivalent of severance pay because the salary continuation would cease if the employees were to find other employment within a certain time span. The court viewed severance pay as a guaranteed payment "regardless of the employee's obtaining other work." *Id.* 500 N.E.2d at 1311. Additionally, in order to resemble severance pay the amount to be paid on termination should be directly related to the employee's years of service. *Id.*

In the instant case, the wage continuation provision in paragraph (e)(iii) of the key employees' contracts is not related to the employees' years of past service, but is bottomed instead on the employee's base salary at the time of termination. Moreover, the amount to be paid does not represent a specific sum regardless of the employee's obtaining other work. Instead, no amount may be due if the employee immediately obtains suitable employment at an equivalent or higher salary. Significantly, apart from the wage continuation obligation in paragraph (e)(iii) of their contracts, the key employees in question are unconditionally entitled to receive no less than the amount of money payable in accordance with the debtor's severance pay policy in effect when they were terminated, as expressed in paragraph (e)(ii) of the contracts. These sums, which are specifically denominated as severance, have already been satisfied by payment to the key employees and are not in issue here.

The additional amounts due under paragraph (e)(iii) reflect a salary continuation obligation in the event of termination without cause that was offered to key employees more than a year before the Chapter 11 petition was filed as an additional inducement to remain with the company during the financially troubled times ahead. The provisions in paragraph (e)(iii) do not satisfy the standards for qualification as severance pay under Massachusetts law and may not be characterized as an actual, necessary cost and expense of preserving the estate within the meaning of 11 U.S.C. § 503(b)(1).

## CONCLUSIONS OF LAW

1. This court has jurisdiction over the subject matter and the parties in accordance 28 U.S.C. § 1334(a) and 28 U.S.C. § 157(a). This is a core proceeding in accordance with 28 U.S.C. § 157(b)(2)(A).

2. The key employee contracts in question are executory contracts within the meaning of 11 U.S.C. § 365(a).

3. The debtor has established that the key employee contracts in question are onerous and burdensome to the estate and that in the exercise of its business judgment it is in the best interest of the debtor and its estate to reject these contracts. Accordingly, such rejection is approved and the debtor's motion for rejection is granted.

4. Paragraph (e)(iii) of the key employee contracts constitutes a wage continuation obligation in the event an employee's services are terminated without cause and does not amount to a severance pay obligation which would rise to an administrative expense priority upon rejection of the contract pursuant to 11 U.S.C. § 365(a).

5. The breach of the wage continuation obligation in paragraph (e)(iii) of the key employee contracts resulting from the debtor's rejection of such contracts gives rise to a prepetition unsecured general claim in accordance with 11 U.S.C. § 362(g).

SETTLE ORDER in accordance with the foregoing.