In re MUREXCO PETROLEUM, INC., Debtor.

PHOENIX EXPLORATION, INC., et al., Appellants,

v.

Robert YAQUINTO, Jr., Trustee for Murexco Petroleum, Inc., Appellee.

No. 392–34051–HCA–7.
Civ. A. No. 3–93–CV–0689–H.

United States District Court, N.D. Texas, Dallas Division.

June 21, 1993.

Alan S. Trust, Hale Spencer Pronske & Trust, Dallas, TX, for appellants.

Carol A. Crabtree Donovan, Robert Yaquinto, Jr., Sherman & Yaquinto, Dallas, TX, for appellee.

### MEMORANDUM OPINION AND ORDER

SANDERS, Chief Judge.

Before the Court are the Brief of Appellants, filed April 27, 1993; the Brief of Appellee, filed May 12, 1993; and the Reply Brief of Appellants, filed May 24, 1993.

## I. Background

Appellants Phoenix Exploration, Inc., Phoenix Operating Company, and Renown Petroleum, Inc. ("Phoenix" or the "Phoenix Group") appeal from the February 18, 1993 Findings of Fact and Conclusions of Law and Order on the Motion of Debtor to Reject Executory Contract ("Order") filed by the bankruptcy court. This Order construed a letter agreement and an Asset Purchase Agreement ("APA") under which the Debtor, Murexco Petroleum, Inc. ("Murexco" or "Debtor"), agreed to sell many of its assets, including oil and gas well operating rights, to the predecessor of Phoenix Operating Company ("POC"), one of the Appellants. The Order treated the operating rights portion of the letter agreement and the APA as an executory contract and, pursuant to 11 U.S.C. § 365(a), allowed that portion of the parties' agreement to be rejected. The Order was stayed by the bankruptcy court pursuant to an Agreed Status Quo Order. *See* Phx.Desig. No. 23. This Court subsequently extended the stay to July 1, 1993.

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a). The Court will set aside findings of fact only if they are clearly erroneous, but the conclusions of law are subject to review *de novo*. *Matter of Allison,* 960 F.2d 481, 483 (5th Cir.1992).

## II. Analysis

On May 4, 1992 ("Petition Date"), Murexco filed a voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code. Later, on February 12,

1993, the bankruptcy court converted the underlying proceeding into a Chapter 7 case.

On February 18, 1993, the bankruptcy court granted Murexco's Motion to Reject Executory Contract ("Motion"). *See* Phx.Desig. No. 1. In the Motion, Murexco sought leave of the bankruptcy court to reject the APA and the letter agreement dated February 29, 1988 between Murexco and HarCor Property Management, Inc. ("HarCor")—the predecessor of POC. *See* Phx.Desig. No. 11.

The underlying APA contained two independent stages: (1) a First Closing at which all of Murexco's proven undeveloped reserves and possible reserves along with certain other assets including Murexco's operating rights under all of its oil and gas well operating agreements would be sold to HarCor, *see* APA at 1–2, Article I(A); and (2) a Second Closing at which all of Murexco's proven developed, producing and behind the pipe reserves would be sold to HarCor, *see* APA at 4, Article II. The accompanying letter agreement provided that HarCor would be the contract operator for Murexco "until such time as HarCor becomes the operator of record."

The First Closing was completed as scheduled on February 29, 1988. *See* Motion at 1, ¶ 2. Appellants state that uncontroverted evidence presented to the bankruptcy court showed that Murexco received the agreed upon $500,000.00 at the First Closing, of which $289,419.61 was allocated to HarCor's acquisition of Murexco's oil and gas well operating rights. *See* Phx.Desig. No. 14 at 4, ¶ 7. Appellants thus argue that all of the material contractual obligations created by the First Closing have been completed. Hence, Appellants conclude that sale of Murexco's operating rights is not executory and is not subject to rejection.[1]

Before proceeding any further, the Court must review the relevant portions of the APA and the letter agreement in detail:

Article I of the APA states that, "[a]t the First Closing, HarCor agrees to purchase and Murexco agrees to transfer, sell and convey all of its right title and interest in and to ... Murexco's operating rights under all of its operating agreements." APA, Article I, Section A.; Phx.Desig. 11. The consideration for this sale included the payment noted above.

In Article IV of the APA, entitled "Additional Actions Upon Best Efforts", the parties agreed that they would both "use their best efforts as soon after First Closing as possible, to have:

A. Paco agree to name HarCor as operator of its Murexco operated wells.

[and]

C. Klienwort Benson Energy agree to name HarCor as operator of its Murexco operated wells."

Importantly, this section of the APA notes that "[t]he term 'best efforts' means a good faith attempt by each party to cause the designated actions to occur, but if one or more such actions do not occur, the validity of the Agreement, and the actions otherwise required to be taken by the Parties, shall not be affected." *Id.* at Article IV.

Article VI of the APA, entitled "Contract Operator Agreement", provides:

At First Closing, Murexco will appoint HarCor to become the contract operator with respect to all joint operating agreements on the Undeveloped Reserves and Developed Reserves as to which it is the operator. The contract operator agreement to be executed by Murexco is attached as Exhibit 11. Subsequent to First Closing, Murexco and HarCor will use their best efforts to obtain the required consents to cause HarCor to become the operator of record with respect to such agreements.

Article VIII of the APA lists several conditions precedent to the First Closing which include, for example, the requirement that "HarCor and the general and limited partners of Paco ... consent in writing for Har-

---

1. The Court notes that the Second Closing never occurred. However, for the purposes of this appeal, this fact is irrelevant. The parties appear to agree that the First Closing is a severable portion of the entire APA. Moreover, neither the bankruptcy court nor Appellee relied on the fact that the Second Closing did not occur to show that the "operating rights" portion of the APA was executory.

Cor to administer the affairs of Paco" and the requirement that "[t]he written consent of John Hancock Mutual Life Insurance Company and Murchison Energy Corporation to the terms and conditions of the sale of [the assets]" be obtained. The final sentence of this section of the APA, however, states that "[a]ll conditions precedent shall be deemed to have been satisfied upon the occurrence of the First Closing." *Id.* at Article VIII.

Finally, in Article IX of the APA Murexco represented that "[t]he execution of [the APA] and the performance of the obligations hereunder will not violate or result in a breach or constitute a default under ... any agreements of Murexco, nor require approval or consent." *Id.* at Article IX.

The contract operating agreement (sometimes referred to as the letter agreement) referred to in Article VI as Exhibit 11, which was also signed by representatives of the parties, provides that:

> Murexco is the operator of record of certain oil and gas wells situated in the States of Texas, Oklahoma and Louisiana (the "Wells"). Pursuant to the [APA] of even date herewith, Murexco has agreed to use its best efforts to cause HarCor to become the operator of record of the Wells with regard to the joint operating agreements in the manner and at the times provided in the [APA].
>
> Murexco and HarCor hereby agree that HarCor shall be employed as the contract operator of the Wells until such time as HarCor becomes the operator of record. HarCor's employment hereunder shall in all respects be governed by the terms and provisions of the specific operating agreement executed in connection with the particular Well.
>
> The parties agree to negotiate in good faith a definitive contract operating agreement as soon as practicable after the First Closing. Until such time as the definitive contract operating agreement is executed, this letter agreement shall remain in full force and effect.

*Id.*

Under the Bankruptcy Code, a bankruptcy court may allow a trustee or debtor to reject an executory contract. *See* 11 U.S.C. § 365(a). This provision of the Code allows a trustee or debtor to relieve the bankruptcy estate of burdensome agreements which have not been completely performed. However, the Code does not furnish a definition of the term "executory contract". The courts that have applied § 365(a) have indicated that executory contracts are agreements under which the parties' obligations are so far unperformed at the time of the bankruptcy filing that the failure of either party to complete performance would constitute a material breach of the contract, hence excusing the performance of the other party. *See, e.g., In re Flexible Automation Systems, Inc.,* 100 B.R. 986 (N.D.Ill.1989); *In re Child World, Inc.,* 147 B.R. 847 (Bankr.S.D.N.Y.1992); *In re Placid Oil Co.,* 72 B.R. 135, 137 (Bankr. N.D.Tex.1987). Importantly, in order for an agreement to qualify as an executory contract, performance must " 'remain[ ] due to some extent on both sides.' " *N.L.R.B. v. Bildisco and Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (quoting H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 347 (1977)).

■ Under the terms of the letter agreement, HarCor is to be employed as the contract operator of the wells in question. HarCor thus has the continuing duty to perform as the contract operator. However, the Court concludes that no performance from Murexco remains due which, if left unperformed, would constitute a material breach of the letter agreement. The letter agreement requires Murexco to make HarCor the contract operator of the wells in question. No one challenges the fact that this has been done. The letter agreement also obligates Murexco to use its "best efforts to cause HarCor to become the operator of record." However, the non-performance of this obligation cannot make the letter agreement executory. The APA defines the term "best efforts" and provides that "[t]he term 'best efforts' means a good faith attempt by each party to cause the designated actions to occur, but if one or more such actions do not occur, the validity of the Agreement, and the actions otherwise required to be taken by the Parties, shall not be affected." Thus, the

fact that Murexco has not caused HarCor or its successor, POC, to become the operator of record does not indicate that a material breach of the agreement has occurred, hence causing the letter agreement to be executory. *See Matter of KM Group, Inc.,* 129 B.R. 152, 155 (Bankr.S.D.Ohio 1991) (holding that an obligation subject to a best efforts clause did not render the underlying contract executory). Thus, the Court concludes that the letter agreement is not executory.

Similarly, after examining the APA, the Court also concludes that that agreement does not require any further performance by the parties which is not also subject to the "best efforts" clause. For example, Article VI of the APA indicates that "[s]ubsequent to First Closing, [the parties] will use their best efforts to obtain the required consents to cause HarCor to become the operator of record with respect to such agreements." Since this clause is subject to the parties' best efforts, the non-performance of this condition cannot be a material breach of the APA. Therefore, there are no conditions of the APA which, if not performed, would constitute a material breach of that agreement.

### III. Conclusion

The parties' agreement to sell Murexco's operating rights is not executory. The judgment of the bankruptcy court is **REVERSED.**

**SO ORDERED.**