United States Court of Appeals,

Fifth Circuit.

No. 93-1636

Summary Calendar.

In the Matter of MUREXCO PETROLEUM, INC., Debtor.

PHOENIX EXPLORATION, INC., Appellants,

v.

Robert YAQUINTO, Jr., Trustee for Murexco Petroleum, Inc., Appellee.

Feb. 28, 1994.

Appeal from the United States District Court for the Northern District of Texas.

Before JOLLY, WIENER, and EMILIO M. GARZA, Circuit Judges.

PER CURIAM:

Appellant Robert Yaquinto, Jr., Trustee for Murexco Petroleum, Inc., appeals a decision of the district court reversing a bankruptcy court judgment which held that a contract between Murexco and Appellees Phoenix Exploration, Inc., Phoenix Operating Co., and Renown Petroleum, Inc. (Phoenix) was executory when Murexco filed its Chapter 11 petition. As we agree with the district court's conclusion that the bankruptcy court erred in holding that the contract was executory, we affirm the judgment of the district court.

I

FACTS AND PROCEEDINGS

Murexco and the predecessor of Phoenix, HarCor Property

1

Management, Inc.,[1] entered into an Asset Purchase Agreement (the APA) on February 29, 1988. Under the APA, Murexco agreed to sell many of its assets in two independent stages: At the first closing, all of Murexco's proven undeveloped reserves and possible reserves, along with certain other assets—including Murexco's operating rights under all of its oil and gas well operating agreements—would be sold to HarCor. At the second closing, all of Murexco's proven developed, producing, and behind the pipe reserves would be sold to HarCor.

The first closing was completed as scheduled on February 29, 1988. Murexco received $500,000 for the sale, of which $289,419.61 was allocated to HarCor's acquisition of Murexco's oil and gas well operating rights. The Letter Agreement accompanying the APA (Exhibit 11 to the APA) provided that HarCor would be the contract operator for Murexco "until such time as HarCor becomes the operator of record." Murexco was the operator of record on wells in Louisiana, Texas, and Oklahoma. Although it is clear that HarCor became the "contract operator," the parties dispute whether HarCor, or its successor, Phoenix, ever became the "operator of record."

The second closing never occurred because disputes erupted between the parties as to Murexco's ability to convey clear title to the developed reserves that it was supposed to deliver at the

_____

[1]HarCor Property Management, Inc. became HarCor Exploration, Inc. HarCor Energy, Inc. succeeded to the rights of HarCor Exploration, Inc. For our purposes, we will refer to any or all of these entities as HarCor.

2

second closing.  By letter agreement dated August 30, 1988, HarCor agreed to pay Murexco approximately $180,000 as liquidated damages for failure of the second phase to close.  Thus no performance remained due between the parties as to the second closing.

Murexco filed for Chapter 11 bankruptcy on May 4, 1992, and filed a "Motion of Debtor to Reject Executory Contract."  The purpose of the motion was to enable the trustee to reject the Letter Agreement, which is considered a severable portion of the APA.  Phoenix contested the motion, arguing that the APA was not executory and thus the severable Letter Agreement—and the sale of Murexco's operating rights—could not be rejected by the Trustee.

At the trial on the motion, Murexco's president testified that Murexco still had a duty—but only one duty—to perform under the APA:  to obtain consents of nonoperating working interest owners in the affected wells to Murexco's sale of its operating rights.  Murexco relies on the Joint Operating Agreements (JOAs) to supply this duty.  Without those consents, Murexco argued, HarCor could not become the operator of record.[2]

The bankruptcy court construed the Letter Agreement and the APA.  That court concluded that the provisions of the APA that set up the contract operatorship were executory, and held that the contract operating agreement was executory.[3]  Phoenix appealed.

---

[2]Under the APA and Letter Agreement, however, Murexco's duty was to use its "best efforts" to have HarCor named the operator of record, not to name HarCor the operator of record.

[3]Although both parties state that the APA was found to be executory and was rejected, in reality the bankruptcy court held that the "portion of the [APA] that created a contract operator

The district court reversed, holding that the contract was not executory, as failure to have HarCor named the operator of record would not result in a material breach of the APA. The trustee appeals the ruling of the district court.

II

ANALYSIS

A. *Standard of Review*

Although this case has already been reviewed on appeal by the district court, we review the bankruptcy court's findings as if this were an appeal from a trial in the district court.[4] The bankruptcy court's findings of fact are reviewed for clear error; its conclusions of law are reviewed de novo.[5]

B. *Executory Agreement?*

To dispose of this appeal, we need only review the conclusion that the APA or the Letter Agreement was executory at the time the bankruptcy petition was filed.

Section 365 of the Bankruptcy Code provides that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor."[6] This provision allows a trustee to relieve the bankruptcy estate of burdensome agreements which have not been completely performed.

---

rights [sic] is determined to be an executory contract, and is hereby rejected. Murexco ... retains its rights as the operator under the Joint Operating Agreement."

[4]*Matter of Killebrew,* 888 F.2d 1516, 1519 (5th Cir.1989).

[5]*Id.*

[6]11 U.S.C. § 365(a).

The Code does not define "executory contract," but both parties agree that the relevant inquiry is whether performance remains due to some extent on both sides.[7] Courts applying § 365(a) have indicated that an agreement is executory if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party.[8]

Harcor has the continuing duty to perform under the Letter Agreement as the contract operator. The issue, then, is whether Murexco has any duties the nonperformance of which would constitute a material breach of the letter agreement. We think not.

First, the Letter Agreement obligates Murexco to make HarCor the contract operator of the wells in question. Neither disputes that HarCor is the contract operator of the wells.[9] Second, the Letter Agreement requires Murexco to use its "best efforts to cause

---

[7]*NLRB v. Bildisco & Bildisco,* 465 U.S. 513, 522 n. 6, 104 S.Ct. 1188, 1194 n. 6, 79 L.Ed.2d 482 (1984) (quoting H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 347 (1977)).

[8]*See, e.g., In re Child World, Inc.,* 147 B.R. 847 (Bankr.S.D.N.Y.1992); *In re Flexible Automation Systems, Inc.,* 100 B.R. 986 (N.D.Ill.1989); *In re Placid Oil Co.,* 72 B.R. 135, 137 (Bankr.N.D.Tex.1987). The source of this definition is a two-part article by Professor Vern Countryman, *Executory Contracts in Bankruptcy: Part I,* 57 Minn.L.Rev. 439, 458-62 (1973), and *Executory Contracts in Bankruptcy: Part II,* 57 Minn.L.Rev. 479 (1974).

[9]Although the Letter Agreement anticipated the negotiation of a "definitive contract operating agreement," Murexco does not urge this as a possible ground to conclude that the Letter Agreement is still "executory."

HarCor to become the operator of record."[10]  Whether this condition has been met is not necessarily decisive of the executory or non-executory status of the Letter Agreement:  the issue is whether Murexco's failure to perform this obligation would constitute a material breach of the Letter Agreement.  We agree with the district court's conclusion that nonperformance of Murexco's duty to use its "best efforts" would not constitute a material breach. We rely on the APA itself to reach this conclusion.

The parties agreed that "best efforts" means "a good faith attempt by each party to cause the designated actions to occur"; provided that "if one or more of such actions do not occur, the validity of the Agreement, and the actions otherwise required to be taken by the Parties, shall not be affected."  Thus as a matter of law, the failure of Murexco to complete performance would not constitute a material breach of the contract—it would not excuse HarCor's performance.  The parties' clearly intended that if Murexco did not succeed in having HarCor named the operator of record, the remainder of the APA—including HarCor's duty to perform as the contract operator of the wells—would be unaffected by such failure.  Clearly, then, Murexco's failure to perform any duty subject to the "best efforts" clause would not constitute a

---

[10]Although Murexco argues that its duty was to obtain consents of the nonoperating working interest owners, that "duty," if it is one, is one arising under the JOAs, not under the APA.  Such consents were allegedly required so that Phoenix could be named the operator of record.  But Murexco was not obligated to name HarCor the operator of record;  rather, Murexco was obligated to use its best efforts to have HarCor named the operator of record.

6

material breach excusing performance by HarCor.

Nevertheless, Murexco argues that HarCor's "acquisition" of consents of the working interest owners or gaining operator of record status was a condition precedent to the first closing under Article VIII of the APA. But Article VIII of the APA specifically states that "[a]ll conditions precedent shall be deemed to have been satisfied upon the occurrence of the First Closing." As the first closing did occur, the "outstanding duty"—that Murexco insists is a condition precedent—was deemed satisfied by the plain wording of the APA. As that duty is thus deemed performed by agreement of the parties, Murexco cannot now argue that it has an outstanding, unperformed duty under the APA. It follows, then, that as neither the APA nor the severable Letter Agreement is executory, neither may be rejected by the trustee under 11 U.S.C. § 365(a).

III

CONCLUSION

For the foregoing reasons, we find that at the time Murexco's Chapter 11 petition was filed, neither the APA nor Exhibit 11 to the APA was not executory. We therefore affirm the district court's reversal of the bankruptcy court's judgment.[11]

AFFIRMED.

---

[11]As the bankruptcy court judgment has been reversed, it is void. *Atlantic Coast Line Railroad Co. v. St. Joe Paper Co.,* 216 F.2d 832, 833 (5th Cir.), *cert. denied,* 348 U.S. 963, 75 S.Ct. 522, 99 L.Ed.2d 750 (1954). The findings and conclusions in support of that reversed judgment are thus void.