**In re WRT ENERGY CORPORATION, Debtor.**

**Bankruptcy No. 96–50212–011.**

United States Bankruptcy Court,
W.D. Louisiana,
Lafayette–Opelousas Division.

Nov. 13, 1996.

Joel P. Kay, Edward Lee Morris, Sheinfeld, Maley & Kay, Houston, TX, for WRT Energy Corporation.

Carl D. Rosenblum, New Orleans, LA, for Pigeon Land Company, Inc., et al.

M. Taylor Darden, New Orleans, LA, for Continental Land & Fur Company, Inc.

Daniel H. Golden, New York City, and Douglas S. Draper, New Orleans, LA, for Official Committee of Unsecured Creditors.

Reginald J. Ringuet, Lafayette, LA, and Jarrel D. McDaniel, Houston, TX, for Milam Royalty Corporation.

## REASONS FOR DECISION

GERALD H. SCHIFF, Bankruptcy Judge.

WRT Energy Corporation ("Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on February 14, 1996, and on that day an order for relief was duly entered. The Debtor has remained in possession of its property as a debtor in possession as no trustee was appointed.

On May 20, 1996, a Motion to Compel Debtor–In–Possession to Assume or Reject Executory Contracts and Unexpired Leases and to Satisfy Requirements of 11 U.S.C. 365(b)(1) as a Condition of Assumption ("Pigeon Land Motion") was filed by Pigeon Land Company, Inc., Floris Fay Forgey Driskill, Mary Wiseman Geoffroy, Thomas Charles Forgey, Ann Thomas Forgey Williams, Charlie Ann Forgey Eues, Gaylen Ann Landry Briehn, and Lionel Charles Landry. Shortly thereafter, a Motion to Compel Assumption or Rejection of Executory Contract and Unexpired Leases and to Comply with 11 U.S.C. 365(b)(1) as a Condition of Assumption ("Continental Motion") was filed by Continental Land & Fur Co., Inc. Exxon Corporation filed a memorandum in support of the Continental Motion.

The Debtor filed an opposition to each motion as did the Official Committee of

Unsecured Creditors. Milam Royalty Corporation, a creditor, filed a memorandum in support of the Debtor's opposition to the motions. A hearing on the motions was held on July 2, 1996. After hearing from all parties in interest, the motions were taken under advisement.

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. Section 1334. The case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 22.01 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. Section 157(b)(2).

These Reasons for Decision constitute the Court's findings of fact and conclusions of law pursuant to Rule 7052, Federal Rules of Bankruptcy Procedure.

The court is called upon to decide an issue which still has not been clearly settled by bankruptcy courts sitting in Louisiana, that is, whether the standard Louisiana oil, gas & mineral lease ("OG & ML") is either an executory contract or unexpired lease within the meaning of section 365 of the Bankruptcy Code?

## I. The Louisiana landowner and "his" minerals.

■ Louisiana Civil Code Article 490 provides that:

Unless otherwise provided by law, the ownership of a tract of land carries with it the ownership of everything that is directly above and under it. ˙

The owner may make works on, above, or below the land as he pleases, and draw all the advantages that accrue from them, unless he is restrained by law or by rights of others.

The legal restraint mentioned in Article 490 is provided by LSA–R.S. 31:6[1], which declares:

1. Title 31 of the Louisiana Revised Statutes will

Ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form, or of any elements or compounds in solution, emulsion, or association with such minerals. The landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership.

It is thus hornbook law that, in Louisiana, oil and gas are not owned by the landowner, or any other person, until reduced to possession. *Succession of Rugg*, 339 So.2d 519 (La.App. 2 Cir.1976), writ denied 341 So.2d 897.

## II. The OG & ML.

Article 15 of the Mineral Code provides that:

A landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession.

And article 114 of the Mineral Code defines a "mineral lease" as "a contract by which the lessee is granted the right to explore for and produce minerals." The landowner, through the OG & ML, conveys to the lessee the right to explore and develop the land for production of minerals and to reduce them to possession in exchange for the payment of "rent" in the form of either a percentage of the proceeds from production or an in kind amount of the production.

## III. Bankruptcy concepts.

Section 365(a) provides a mechanism whereby executory contracts and unexpired leases may be either assumed or rejected by the trustee, or in chapter 11 cases, by the debtor in possession if no trustee has been appointed:

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

hereinafter be referred to as the "Mineral Code."

## A. *Executory Contracts.*

### 1. What is an Executory Contract?

■ In enacting the Bankruptcy Code, Congress chose not to define "executory contract." The legislative history and an overwhelming majority of the courts addressing the issue, support the definition of Professor Vern Countryman that an executory contract is—

> a contract under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing the performance of the other.

Countryman, *Executory Contracts in Bankruptcy, Part I*, 57 Minn.L.Rev. 439, 460 (1973).

The Fifth Circuit has adopted this definition declaring that "an agreement is executory if at the time of the bankruptcy filing, the failure of either party to complete performance would constitute a material breach of the contract, thereby excusing the performance of the other party." *Matter of Murexco Petroleum, Inc.*, 15 F.3d 60, 62–63 (5th Cir.1994). The applicability of the Countryman definition was recently reaffirmed by the Fifth Circuit in *Stewart Title Guaranty Co. v. Old Republic National Title Insurance Co.*, 83 F.3d 735, 741 (5th Cir.1996). The Supreme Court has likewise applied this definition in the case of *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 79 L.Ed.2d 482 (1984), wherein, at footnote 6, the court declared:

> The Bankruptcy Code furnishes no express definition of an executory contract, see 11 U.S.C. § 365(a), but the legislative history to § 365(a) indicates that Congress intended the term to mean a contract "on

which performance is due to some extent on both sides." H.R.Rep. No. 95–595, p. 347 (1977), see S.Rep. No. 95–989, p. 58 (1977).

### 2. The conflict between *Texaco* and *Murexco.*

In the context of the OG & ML, however, substantial confusion exists as a result of the decision in the case of *Texaco, Inc. v. Louisiana Land and Exploration Co.*, 136 B.R. 658 (M.D.La.1992), wherein Judge Parker concluded that a contract was executory if performance was due by one or more of the parties [2]. In reaching this conclusion, Judge Parker relied upon the Fifth Circuit decisions of *In re Tonry*, 724 F.2d 467 (5th Cir.1984), and *Turner v. Avery*, 947 F.2d 772 (5th Cir.1991). Indeed, the court in *Tonry* relied upon the pre-Code case of *In re American Magnesium Company*, 488 F.2d 147, 152 (5th Cir.1974), for the proposition that "a contract is executory when something remains to be done by one or more of the parties".[3]

The court believes it noteworthy that both *Tonry* and *Avery* dealt with attorney contingent fee contracts. For this reason, those cases may be considered aberrations as the court may have been making a policy statement regarding attorneys as debtors in chapter 7 proceedings. While the type of contract involved should not be determinative of whether the contract is executory, this court can conceive of no other rational explanation for this divergence in treatment.[4]

The definition of executory contract employed by the Fifth Circuit in *American Magnesium, Tonry* and *Avery*, and by Judge Parker in *Texaco*, however, is clearly contrary to the Countryman definition.

---

**2.** Notwithstanding this conclusion, however, Judge Parker suggested (136 B.R. at p. 667–668) that even under the Countryman definition the OG & ML was an executory contract:

> An argument can be made that a Louisiana mineral lease is an executory contract because the lessor throughout the performance of the contract owes the obligation of non-interference and the lessee owes the significant obligations of development and paying royalty. Viewed in this light, there are bilateral obligations to be performed under the State leases.

**3.** Notwithstanding the departure from the Countryman definition, the court in *American Magnesium* found that both parties had "ongoing commitments."

**4.** Another possible explanation is that the Countryman definition, published in the January 1973 edition of the Minnesota Law Review, may have received neither acclaim nor widespread acceptance at the time of the *American Magnesium* decision, published in January of 1974.

Without specifically overruling its earlier decisions, the Fifth Circuit without question embraced the Countryman definition in both *Murexco* and *Stewart Title*. Obviously, only one definition is appropriate, and this court is compelled to follow the most recent pronouncement by the Fifth Circuit. Consequently, this court respectfully declines to follow Judge Parker's observation in *Texaco* that a contract is executory if future performance is due by only one party to the contract.

### 3. Any future obligations of the mineral lessee and lessor?

Such definition being established, therefore, the remaining inquiry is two-fold. First, does there remain performance on the part of both parties to the OG & ML? If so, would a failure to perform by one of the parties constitute a *material* breach thereby excusing performance from the other party to the contract?

No party in interest suggests that there does not remain future performance on the part of the mineral lessee, *i.e.*, the Debtor, and that the Debtor's failure to perform under the OG & ML would constitute a material breach thereof. Our focus, therefore, is upon the mineral lessor's future obligations under the OG & ML.

■ Such obligations are found in Articles 119 and 120 of the Mineral Code. Article 119 imposes three obligations on the mineral lessor: (I) to deliver the premises leased, (ii) to refrain from disturbing the lessee's possession, and (iii) to perform the contract in good faith. Article 120 imposes a warranty of title with respect to the interest leased.

### 4. Would a breach by the mineral lessor of its obligations be considered material?

Are these obligations such that the lessor's failure to perform would constitute a *material* breach, thus excusing the lessee from its obligations thereunder?

■ The obligations of the lessor under Louisiana law are not affirmative duties. The obligations are essentially obligations not to act in a certain manner. The issue is whether the breach of these non-affirmative, or passive, duties would excuse the performance of the lessee.

■ Essentially the only way in which the lessor could breach its obligations under the OG & ML would be to interfere with the lessee's rights under the OG & ML. Under Louisiana law, however, such interference with the lessee's rights would not excuse the performance of the lessee, but would only delay such performance. In numerous cases dealing with a lessor's interference with a lessee's rights under an OG & ML, the Louisiana Supreme Court has held that the lessee is not forced to suffer the loss of the lease as a result of the hindrance, but that the lessee is granted an extension of time in which to comply with his obligations. *Williams v. James*, 188 La. 884, 178 So. 384 (1938); *Baker v. Potter*, 223 La. 274, 65 So.2d 598 (1952); *Knight v. Blackwell Oil & Gas Co.*, 197 La. 237, 1 So.2d 89 (1941; *Fomby v. Columbia County Dev. Co.*, 155 La. 705, 99 So. 537 (1924). See, also, Tracy, *The Effects of Top Leasing in the Louisiana Law of Oil and Gas*, 43 La.L.Rev. 1189 (May 1983).

### 5. Jurisprudence.

In a case decided under Oklahoma law, involving similar facts as presented here, the United States District Court for the Northern District of Oklahoma decided that an Oklahoma oil and gas lease was not an executory contract under section 365 for the same reasons, observing:

> [The lessor's] only obligations under the contract is to defend her title to the leased land and not to interfere with the lessees' drilling operation. Breach of these duties would not excuse performance by [the lessee], but would merely abate [the lessee's] obligation for so long as [the lessor] was in breach. *In re Heston Oil Co.*, 69 B.R. 34 (N.D.Okla.1986).

Although *Heston* was decided under Oklahoma law, Louisiana's law with respect to the effect of the lessor's breach of his non-affirmative obligations appears to be identical.

■ This court believes that the obligations of the lessor under the OG & ML are not such that the lessor's failure to perform

would constitute material breach so as to excuse the lessee from its obligations under the lease. As discussed above, the failure of the lessor to perform would only delay the performance of the lessee's obligations.

For the foregoing reasons, the court holds that the mineral leases at issue in the present case do not constitute "executory contracts" within the Countryman definition as adopted by the 5th Circuit in the *Murexco Petroleum* and *Stewart Title* cases.

### B. Unexpired Leases.

The court next considers whether the phrase "unexpired lease of the debtor" is be construed to include an OG & ML to which a debtor is a party so as to make the OG & ML subject to the provisions of section 365 of the Bankruptcy Code.

### 1. Real rights vis-a-vis personal rights.

Title IX of the Civil Code of Louisiana is titled "OF LEASE" and contains the general laws of the State of Louisiana with respect to the lease of things, including real property. The so-called "mineral lease", however, is regulated by the Mineral Code.[5]

■ The court finds that, as a result of the interplay between the Mineral Code, the Civil Code, and the jurisprudence of the State of Louisiana, the OG & ML vests the lessee with *real* rights whereas a lease of real property creates only *personal* rights.[6] This distinction is significant in the Louisiana civilian tradition, and clearly supports a finding that the OG & ML is not an unexpired lease within the meaning of section 365 of the Bankruptcy Code.

### 2. Does the limited bankruptcy jurisprudence help?

Only a handful of cases have addressed the issue of the characterization of the OG & ML. With but one exception, these courts addressing the issue have concluded that the OG & ML is not a lease within the meaning of section 365.

*Delta Energy Resources, Inc. v. Damson Oil Corporation,* 72 B.R. 7 (W.D.La.1985), although not directly involving the characterization of the OG & ML, was one of the first bankruptcy cases which discussed this issue. With respect to such characterization, the court stated:

> Under Louisiana law, a mineral lease is to be treated as a real right, an incorporeal immovable, which can be alienated and mortgaged to third parties. *It is not the conventional lease contemplated by Section 365, but is in fact a real right in favor of another.* We find that under the circumstances here, the distinction between "sublease and agreement" is without substantive effect for the purposes of Section 363. (Emphasis added.)

*Id.* at p. 11.

The Fifth Circuit has also addressed the issue, although the case of *Matter of Topco, Inc.,* 894 F.2d 727 (5th Cir.1990), arose out of Texas and did not specifically deal with an OG & ML. While this fact prevents *Topco* from any binding precedential value, the case is helpful as certain comments of the Fifth Circuit suggest how the issue presented in the instant case might be determined by that body.

In *Topco,* the Fifth Circuit expounded on the issue of mineral leases as unexpired leases in all jurisdictions. In an extremely lengthy footnote, footnote 17, the court stated (all citations being omitted):

> While we interpret the Bankruptcy Code as a matter of federal law, state law determines whether these contracts constitute unexpired leases subject to Section 365.

---

5. The court acknowledges that article 2 of the Mineral Code suggests that the Civil Code articles on leases apply to the lease of minerals where the Mineral Code is silent. This fact, however, does not suggest that the characterization of OG & ML with respect to section 365 of the Bankruptcy Code is to be adjudged by addressing the Civil Code as opposed to the Mineral Code.

6. The court adopts the reasoning set forth by counsel for the Debtor in Paragraph IV. B. of the memorandum filed June 28, 1996, under the heading "Louisiana Oil and Gas Leases Constitute Ownership Interests in Real Property," and by counsel for Milam Royalty Corporation in Paragraph III. 1. of the memorandum filed June 28, 1996, under the heading "A Louisiana Mineral Lease Creates Real Rights Constituting an Ownership Interest in Real Property."

In Texas, they do not. Instead, they convey interests in real property. The term "oil and gas lease" is a misnomer because the interest created by an oil and gas lease is not the same as an interest created by a lease governed by landlord and tenant law. As the district court noted, the so-called leaseholds at issue in this case actually constitute determinable fee interests.

Other states also construe oil and gas "leases" this way.... In Louisiana, a mineral lease is a real right, an incorporeal immovable. (citing Delta Energy v. Damson Oil).

> \* \* \* \* \* \*

These leases do not grant title to the oil and gas itself, but grant the right to enter the land and reduce the oil and gas to the lessee's possession. This grant in effect constitutes a sale of part of the land. Therefore, under Texas law, Section 365 does not govern their disposition. \* \* \*

Most courts considering the issue have adopted this approach. Several have concluded that oil and gas leases considered to be freehold estates by the governing state law do not constitute "unexpired leases" under the Bankruptcy Code and therefore section 365 does not govern their assumption or rejection. (again citing Delta Energy v. Damson Oil).

Unfortunately, an extensive discussion by the court in *Texaco, Inc. v. Louisiana Land and Exploration Co., supra*, went nowhere. As stated hereinabove, Judge Parker discussed the nature of the OG & ML at length, and, further, discussed the difference between the mineral lease and other more standard lease contracts. Then, unexpectedly, he avoided deciding the issue:

> Thus, the holding of Topco does not prevent classification of the Louisiana mineral lease as an "unexpired lease," although it is not authority to the contrary either. This court need not resolve that issue because an unexpired lease is only one type of executory contract.

Judge Parker avoided deciding whether the OG & ML was an unexpired lease within the meaning of section 365(a), choosing instead to base his decision on a finding that the OG & ML was an executory contract.

The most recent discussion of the issue appeared in the case of *In re Ham Consulting Company/William Lagnion/JV*, 143 B.R. 71 (Bkrtcy.W.D.La.1992). In *Ham Consulting*, Judge Hunter squarely decided that "a Louisiana mineral lease is not an unexpired lease for purposes of the application of § 365(d)(4)." Although Section 365(d)(4) applies to unexpired leases of nonresidential real property, the tenor of Judge Hunter's decision leaves no doubt that *Ham Consulting* stands for the proposition that the OG & ML is not an unexpired lease within the meaning of section 365.[7]

■ The foregoing jurisprudence clearly supports the conclusion that the OG & ML is not an unexpired lease within the meaning of section 365 of the Bankruptcy Code. This court agrees with this conclusion.

## C. *Conclusion.*

Since the mineral leases at issue in the present case are neither unexpired leases nor executory contracts, section 365 has no application and WRT cannot be forced to assume or reject the contracts pursuant to section 365.

Therefore, both the Pigeon Land Motion and the Continental Motion are **DENIED.** A separate order in conformity with the foregoing reasons is this day being entered into the record of this proceeding.

---

7. Judge Hunter, in *Ham Consulting*, did hold that the OG & ML was an executory contract, relying on *Texaco*. For the reasons set forth earlier in this decision, I respectfully disagree with my colleague in Alexandria Division.