## Itek Corporation *vs.* Director of the Division of Employment Security & others.

Middlesex.   October 6, 1986. — December 1, 1986.

Present: Hennessey, C.J., Wilkins, Abrams, Nolan, & Lynch, JJ.

*Employment Security,* What constitutes unemployment. *Words,* "Remuneration."

Claimants seeking unemployment compensation benefits who had had their salaries and employment benefits continued to be paid by their employer after their jobs had been eliminated, so long as they remained on inactive status with their employer and did not find other employment, received "remuneration," within the meaning of G. L. c. 151A, § 1 (*r*) (3), rather than severance pay, were not in "total unemployment" as that term is used in c. 151A, § 1 (*r*) (2), and consequently, were not entitled to receive unemployment compensation benefits. [684-686]

Civil action commenced in the Concord Division of the District Court Department on December 14, 1983.

The case was heard by *Louis J. Gonnella,* J.

*Andrew M. Zaikis,* Assistant Attorney General, for Director of the Division of Employment Security.

*Laurence S. Fordham* (*Ann E. Johnston* with him) for the plaintiff.

Nolan, J. The Director of the Division of Employment Security (division) appeals from the decision of a judge in a District Court. Ten employees of Itek Corporation (Itek) claim that they are entitled to unemployment compensation. A review examiner decided in favor of the employees and was upheld by the division's review board. Itek appealed to the District Court pursuant to G. L. c. 151A, § 42. The judge reversed the decision of the division.

Early in 1983, Itek was acquired by Litton Industries. As a consequence, a number of Itek's corporate office positions were deemed superfluous and earmarked for elimination. On

398 Mass. 682                                       683

Itek Corp. *v.* Director of the Division of Employment Security.

March 14, 1983, Itek circulated a memorandum to the employees affected concerning the elimination process. The memorandum informed the employees that, based on their length of service, their salaries would continue to be paid for a specified period after their jobs were eliminated.[1] The employees also were assured that they would continue to receive all benefits for as long as the plan was in effect.[2] Itek offered counseling services to aid in the job search process, and permitted the employees to make use of its offices and facilities for this purpose.

The positions of these ten employees were terminated over the course of a few months, beginning on May 31, 1983. The employees sought unemployment payments on the basis that they were in total unemployment. Itek challenged this claim. According to Itek, the employees were on inactive status and, therefore, were not eligible for unemployment benefits until the salary continuation plan ended. A hearing was held before a division examiner, in which all the Itek employees' claims were consolidated. He concluded that the salary continuation

---

[1] According to this salary continuation plan, employees remained on the Itek payroll and their salaries were paid at the regular intervals. The employees were eligible for a minimum of three months' salary, and up to a maximum of one year's salary. The schedule was as follows:

| | |
|---|---|
| Up to 5 years' service | 3 months |
| 5 years but less than 10 years | 6 months |
| 10 years but less than 20 years | 9 months |
| 20 years and over | 12 months |

The plan could terminate sooner if the employee accepted other employment.

Prior to the announcement of this plan, Itek employees had been covered by a severance pay policy. The severance policy was incorporated into the salary continuation plan. If the salary paid to an employee during the salary continuation period was less than the amount to which the employee was entitled under the former severance pay program, the employee would receive the difference in a lump sum payment. But this would not occur unless the employee found another position very early in the salary continuation period.

[2] These benefits included medical, dental, and life insurance. Seniority and pension credits could also be accrued. The only benefit apparently not available was tuition reimbursement, unless course completion occurred while the employee was still in the salary continuation plan.

program was the equivalent of a severance payment. Relying on our decision in *Bolta Prods. Div.* v. *Director of the Div. of Employment Sec.*, 356 Mass. 684 (1970), the examiner ruled that the employees were entitled to collect unemployment compensation during their period of salary continuation. The division's board of review agreed with the examiner's decision. Itek then sought judicial review in a District Court. The judge held that the employees were receiving "remuneration" within the terms of G. L. c. 151A, § 1 (*r*) (3), and were thereby ineligible for such benefits. We affirm the judgment of the District Court judge.

In our view, the examiner committed an error of law when he concluded that the Itek salary plan was a severance payment and, therefore, was not "remuneration." The finding that this plan is a form of severance payment is a conclusion of law because it has independent legal effect. See Jaffe, Judicial Review: Question of Law, 69 Harv. L. Rev. 239, 241 (1955). It is the equivalent of an assertion that Itek's plan does not constitute "remuneration." A resolution of this case requires us to examine the statutory meaning of "remuneration" and "total unemployment." G. L. c. 151A, § 1 (*r*), (2) and (3). This is a matter of statutory construction and, "to the extent that an agency determination involves a question of law, it is subject to de novo judicial review." *Raytheon Co.* v. *Director of the Div. of Employment Sec.*, 364 Mass. 593, 595 (1974).

The scheme enacted by the Legislature considers an individual to be in total unemployment "in any week in which he performs no wage-earning services whatever, and for which he receives no remuneration, and in which, though capable of and available for work, he is unable to obtain any suitable work." G. L. c. 151A, § 1 (*r*) (2), as appearing in St. 1951, c. 763, § 1. One question is whether the payments received by the claimants after the elimination of their positions constitute "remuneration." The division contends that the review examiner was correct in concluding that *Bolta, supra,* controls this issue. Itek, on the other hand, maintains that our opinions reflect a broader understanding of the definition of "remuneration" than the explicit words found in the statute. We reject

both these arguments. Other language in the statute effectively determines the outcome of this case.

"Remuneration" is defined by G. L. c. 151A, § 1 (*r*) (3), as amended by St. 1976, c. 473, § 3, as "any consideration, whether paid directly or indirectly, including salaries, commissions and bonuses, and reasonable cash value of board, rent, housing, lodging, payment in kind and all payments in any medium other than cash, received by an individual (1) from his employing unit for services rendered to such employing unit, (2) as net earnings from self-employment, and (3) as payment in lieu of dismissal notice, or as payment for vacation allowance . . . . Remuneration shall be deemed to have been received in such week or weeks in which it was earned or for such week or weeks . . . to which it can reasonably be considered to apply." In *Bolta,* 356 Mass. at 688-690, we held that severance pay did not qualify as a "payment in lieu of dismissal notice" and hence was not "remuneration." We do not consider the wages paid by Itek to be severance pay. Rather, we agree with Itek that it is more accurate to characterize this arrangement as a salary continuation plan to employees on inactive status.

It is true that Itek's plan bears some resemblance to the severance payments which were held not to constitute "remuneration" in *Bolta.* The most apparent similarity is that the total amount paid under both arrangements is directly related to the employee's years of service. The differences, however, are far more significant. Unlike the *Bolta* employee, Itek's workers continued to receive the full array of benefits that the company provided to active employees. Also, there was no separation from Itek during the plan's operation. And the salary continuation would cease if the employees were to find other employment within a certain time span, whereas severance pay is guaranteed regardless of the employee's obtaining other work. Given these differences, we hold that the salary continuation plan constitutes remuneration for "services rendered" to Itek. G. L. c. 151A, § 1 (*r*) (3).

We move now to the question whether the employees were in "total unemployment" as that term is used in G. L. c. 151A,

§ 1 (*r*) (2). The first factor in determining whether the claimants were in total unemployment is whether they were performing any wage earning services during the weeks in question. The record supports the conclusion that, with one exception, none of these employees performed any work for Itek while they continued to receive their salaries.[3] But the Legislature has decreed, in § 1 (*r*) (3) of the statute, that consideration "received by an individual . . . from his employing unit for services rendered to such employing unit" qualifies as "remuneration" which disqualifies the applicant from receiving unemployment compensation. Even though an employee may not perform any service for his employer during any particular week, he or she may still receive consideration for services rendered in the past. This consideration represents an acknowledgement by the employer of the employee's faithful performance of his duties. Economic realities may dictate the elimination of certain jobs, but an employer may choose to keep its employees on the payroll. In such cases, the Legislature has provided that one who is receiving a guaranteed wage, even though not actually working, is still employed. § 1 (*r*) (3). The Legislature did not intend that unemployment compensation serve as a supplemental income for those receiving their regular salaries.

We affirm the judgment of the District Court reversing the division's decision.

*So ordered.*

---

[3] One employee testified before the review examiner that she had performed services for Itek while on the salary continuation plan.