Ernest E. MOORE and Mark
R. Fox, Petitioners,

v.

DIGITAL EQUIPMENT CORPORATION,
c/o Automatic Data Processing; The Industrial Claim Appeals Office of the State of Colorado; and Division of Employment and Training of the State of Colorado, Respondents.

Nos. 93CA0223, 93CA0569.

Colorado Court of Appeals,
Div. I.

Jan. 27, 1994.

Hellman & Knight, P.C., Jonathan J. Hellman, Robert J. Weisbard, Englewood, for petitioners.

No appearance for respondent Digital Equipment Corp.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John D. Baird, Asst. Atty. Gen., Denver, for respondents Industrial Claim Appeals Office and Division of Employment and Training.

Opinion by Judge CRISWELL.

This consolidated review proceeding by claimants, Ernest E. Moore and Mark R. Fox, presents the issue whether a lump sum payment made to an employee upon that employee's termination in consideration of the employee's release of all common law and statutory claims against the employer and other parties constitutes a "severance allowance" within the meaning of § 8–73–110(1), C.R.S. (1993 Cum.Supp.), so that such pay-

ment causes the employee's right to unemployment compensation to be reduced. We conclude that such a payment is not such a severance allowance. Hence, we set aside the order of the Industrial Claim Appeals Panel that was based upon its contrary conclusion.

The evidentiary facts here are undisputed. Claimants were terminated by Digital Equipment Corporation (employer) as a result of a work force reduction. For those employees terminated in such reduction, the employer offered a lump sum payment, based upon the length of time the employee had been employed. Such payment was made pursuant to a written agreement and was made only to those employees who were willing to execute that agreement.

The agreement provided that, in addition to the lump sum payment to be made to them, the employees agreeing to its terms could, for some time after their termination, continue to participate in the employer's health, life, dental, and stock option plans. They could also make use of certain counseling and job search services that the employer was to make available.

In return, each employee executing the written agreement agreed to release "any and all claims of any kind or description" that the employee might have against *either* the employer *or* "its officers, directors, agents, successors, assigns or employees." The purpose of this release, as specifically noted by the agreement, was "to prevent [the employee] from suing [the employer], its officers, directors, agents, successors or assigns" under:

—any employment relations law;

—any state, federal, or local law, regulation, or executive order prohibiting discrimination of any type;

—the federal Age Discrimination in Employment Act;

—any law regulating employee benefits;

—any law providing a claim for expenses, attorney fees, "or other monetary or equitable relief;"

—any other claim arising out of the employment relationship or the employees' termination.

The only two benefits excepted from this broad, all-inclusive, ceding of rights and claims were those arising under the employer's pension plan or under the Workers' Compensation Act. Unemployment compensation benefits were not excepted from the release, nor were they otherwise referred to in the agreement.

Both claimants here accepted the terms of the agreement and were paid a lump sum pursuant to its terms. Thereafter, each applied for an unemployment compensation award. The employer insisted, however, that the payment made to them under the written agreement constituted a severance allowance.

The referee held that, because the purpose of the written agreement was to obtain the release of the employee's common law and statutory claims, the payment made by the employer could not be considered such an allowance under the statute. The Panel reversed, concluding that the payment here met the criteria for severance pay set forth in *Bockman v. Mountain States Telephone & Telegraph Co.*, 739 P.2d 887 (Colo.App.1987).

The claimants assert that the referee's conclusion was correct and that the Panel erred in adopting a contrary interpretation of the pertinent statute. We agree.

In the absence of a specific provision referring to severance pay or allowances, a majority of the courts have determined that such payments constitute consideration for past services, and hence, their receipt does not disqualify terminated employees from receiving unemployment compensation. *See* Annot., *Severance Payments As Affecting Right to Unemployment Compensation*, 93 A.L.R.2d 1312 (1964).

At a time when the Colorado statute made no specific reference to a "severance allowance," our supreme court joined this majority by holding that the consideration for the

receipt of a severance payment was the previous service rendered by the employee. Hence, a termination payment required by the terms of a union contract did not reduce the amount of unemployment compensation payable. *Industrial Commission v. Sirokman,* 134 Colo. 481, 306 P.2d 669 (1957).

The present statute, § 8–73–110(1)(a) and (b), C.R.S. (1986 Repl.Vol. 3B) and § 8–73–110(1)(c) and (1.2), C.R.S. (1993 Cum.Supp.), provides that an individual who receives wages in lieu of notice of termination, vacation pay, or "severance allowances" shall be treated as having received wages after termination for a consecutive number of weeks equal to the total of such payment divided by the individual's full-time weekly wage. In addition, in the case of a severance allowance, the recipient shall also have his or her weeks of potential entitlement to compensation reduced to the same extent.

Nowhere in the statute, however, is there to be found a definition of the term, "severance allowances."

*Bockman v. Mountain States Telephone & Telegraph Co., supra,* 739 P.2d at 888, approved the Industrial Commission's definition of this term, as being a:

> payment made by an employer to its employee beyond the employee's wages upon termination of the employment relationship. Such severance pay is normally paid when the separation is not caused by the employee, and is usually based on the length of service given the employer by the employee.

Hence, in *Bockman,* a payment required to be made to the employee upon termination under a union contract that governed the employment relationship was determined to constitute a severance allowance. *See also Green v. Industrial Claim Appeals Office,* 765 P.2d 1064 (Colo.App.1988) (payment made from employee benefit plan governed by Employee Retirement Income Security Act is a severance allowance).

■ Not every payment by an employer to an employee based upon the length of the employee's service is a severance allowance, however. Rather, the *purpose* for the payment must be considered.

In *In re Marriage of Holmes,* 841 P.2d 388, 389 (Colo.App.1992), for example, a division of this court, in determining that the right to receive severance pay is not marital property, described the purpose for such a payment:

> In most cases, the ostensible purpose of severance pay is to provide *a salary substitute* for the worker while he or she searches for a new job. J. McCahey, *Valuation & Distribution of Marital Property* 23–04 at 23–62 (1992). Such pay typically compensates the employee for the economic exigencies and detriments resulting from permanent separation from service without fault *and is intended primarily to alleviate the consequent need for economic readjustment and to compensate for certain losses attributable to dismissal. In re Marriage of Bishop,* [46 Wash.App. 198] 729 P.2d 647 (App.1986). (emphasis supplied)

■ Here, the written agreement between the parties demonstrates that the employer's primary purpose in making a lump sum payment was, as the referee found, *not* to provide a salary substitute to secure the employee's economic well-being during any period of unemployment. While there is self-serving language to this effect in the agreement that was unilaterally prepared by the employer, had this been the employer's primary purpose for the payment, it would not have been conditioned on the employee's execution of the written release.

Further, a severance allowance is a payment made to an employee in return for services previously provided. *See Industrial Commission v. Sirokman, supra;* Annot., 93 A.L.R.2d 1312, *supra.* Hence, payment made by an employer to settle a claim asserted by an employee, even though paid on a weekly basis, is not a payment for services rendered. *See Claim of Gjerdahl,* 411 N.W.2d 283 (Minn.App.1987) (structured set-

tlement of workers' compensation claim, resulting in weekly payments to employee, did not compensate for services rendered within meaning of statute barring unemployment compensation for any week in which employee received compensation for loss of wages).

An employee has no obligation, as a part of the services he or she is to provide to the employer, to renounce legal rights possessed by him or her. *See, e.g.,* § 8–4–110, C.R.S. (1986 Repl.Vol. 3B) (upon termination of employee, employer may not condition payment of amount undisputedly due upon employee's waiver of right to pursue other remedies). Here, the undisputed facts show, as the referee found, that the consideration received by the employer under the terms of the written agreement was the claimants' release of any claim that they might have either against the employer itself or against described third parties.

Hence, the payment to the claimants here was not made in consideration of any prior service rendered by them. While the amount they were paid was based upon the length of their past service, the payment was in exchange for their release of claims—a consideration not due from the claimants as employees, but one that was entirely separate from and independent of that service.

Under these circumstances, therefore, in which the payment is not made in return for services previously rendered by the terminated employee, but is in return for a release of claims, and in which the primary purpose of such payment is to obtain such release, we conclude that the payment is not a "severance allowance" within the meaning of the pertinent statute.

The order of the Panel is set aside, and the cause is remanded to it for the entry of an award to the claimants consistent with the views expressed in this opinion.

ROTHENBERG and PIERCE *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the Colo. Const. art. VI, Sec. 5(3),

and § 24–51–1105, C.R.S. (1988 Repl.Vol. 10B).