DAN M. WHITE *vs.* COMMISSIONER OF THE DEPARTMENT OF EMPLOYMENT AND TRAINING.

No. 94-P-1237.

Middlesex. November 13, 1995. - April 1, 1996.

Present: PERRETTA, IRELAND, & FLANNERY, JJ.

*Employment Security,* Eligibility for benefits. *Employment,* Termination, Severance agreement. *Statute,* Construction. *Words,* "Remuneration," "Severance payment."

A written agreement between an employer and an employee who was being laid off, under the terms of which the employee would receive a lump sum payment and certain other benefits through a date certain in return for the employee's release of any and all claims against the employer, did not constitute "severance payment," that is, payment for services previously rendered, so as to disqualify the employee from obtaining unemployment benefits, where the employee would have received nothing unless he signed the agreement. [252-254]

CIVIL ACTION commenced in the Marlborough Division of the District Court Department on December 16, 1993.

The case was heard by *Dennis J. Brennan,* J.

*Phyllis N. Crockett,* Assistant Attorney General, for the Commissioner of the Department of Employment and Training.

*Andrew Kisseloff* for the plaintiff.

PERRETTA, J. This is an appeal by the Department of Employment and Training (DET) from a judgment of the District Court reversing a denial of unemployment benefits to the plaintiff (employee). The employee was denied benefits on the basis of a determination that a lump sum payment to him by his former employer, Digital Equipment Corporation (Digital), was severance pay within the meaning of G. L. c. 151A, § 1(r)(3). Concluding that the lump sum payment was made to the employee in exchange for his release of Digital from any and all claims arising out of his employment and not as severance pay, we affirm the judgment.

1. *Facts.* We recite the facts as found by DET's review examiner.[1] On June 21, 1993, the employee, a senior software engineer who had been working for Digital for twelve years, was notified that he was being laid off from his employment as of June 25, 1993. Digital had been reducing its work force for several years, and the employee had no expectation of being recalled to work by Digital in the future. Because of the abruptness of the termination notice, Digital continued to pay the employee and provide him with full benefits for seven weeks, that is, up until his termination date of August 13, 1993.[2]

On July 2, 1993, the employee signed an agreement which Digital had prepared and labelled as a "TRANSITION FINANCIAL SUPPORT AGREEMENT." Pursuant to the terms of this agreement, the employee was to receive a lump sum payment in the amount of 12.39 weeks of pay and he would be allowed to continue his participation in Digital's health, life, and dental benefits plan for the twelve-week period of August 13, 1993, through November 6, 1993. The employee was not required to perform any services for Digital after June 25, 1993, nor was he required to repay Digital any part of the lump sum payment if he were to find employment prior to November 6, 1993. Additionally, the employee could avail himself, off premises, of "outplacement services," which Digital would provide for six months.

Digital did not participate in the DET proceedings. The employee gave a copy of the agreement to the review examiner and testified that had he not signed the agreement he would not have received the lump sum payment nor would Digital have allowed him to participate in its medical and dental plans or to use its "outplacement services." The employee stated that as he read the agreement, he sold an asset, his right to "sue Digital for a lot of things," including any

[1]This case involves a question of law, namely, the effect of an agreement between Digital and the employee upon the latter's right to unemployment benefits, and the matter is subject to de novo judicial review. See *Itek Corp.* v. *Director of Div. of Employment Sec.*, 398 Mass. 682, 684 (1986); *Ruzicka* v. *Commissioner of Dept. of Employment & Training*, 36 Mass. App. Ct. 215, 217 n.4 (1994), quoting from *Raytheon Co.* v. *Director of Div. of Employment Sec.*, 364 Mass. 593, 595 (1974).

[2]There is no issue before us concerning whether these payments were made in lieu of notice and, therefore, remuneration under G. L. c. 151A, § 1 (*r*)(3).

discrimination in separating him from his employment. The agreement recites the rights released by the employee as follows:

"Employee on behalf of Employee and Successors accepts the foregoing in full and complete satisfaction of any and all claims of any kind or description that Employee and Successors have, or may have had, or may have against Digital, or its officers, directors, agents, successors, assigns or employees to the date of the execution of this Agreement and releases Digital, and its officers, directors, agents, successors, assigns or employees from any liability for such claims. The effect of Employee's signing this agreement:

a. Is to prevent Employee from suing Digital, its officers, directors, agents, successors or assigns under:

- any employment relations laws;

- any state, federal or local law, regulation or executive order, prohibiting discrimination on account of age, race, color, sex, sexual orientation, national origin, religion, handicap or veterans status;

- the Age Discrimination in Employment Act of 1967, as amended to the date of this Agreement;

- common law, including without limitation, claims arising from any contract or tort law;

- any law regulating the provision of employee benefits, or under any Digital benefit plan except as noted below;

- any public policy, law or equity or claims for expenses, attorney's fees, or other monetary or equitable relief or any other claim arising out, or related to Employee's employment with, or termination from Digital;

- any contract claimed as a result of a Digital policy, including but not limited to Digital's Relocation policy;

- any other claim arising out of Employee's employment with Digital or termination of employment

with Digital from his or her first employment to the date of this Agreement."[3]

Because the amount of the lump sum payment was based upon the employee's years of service with Digital and because the employee would continue to receive medical and dental insurance during the twelve-week period in issue, the review examiner concluded that the employee had received a "form of severance/dismissal pay," that is, he had received remuneration which disqualified him from receiving unemployment benefits for the twelve-week period of August 13 through November 6, 1993.

2. *Discussion.* General Laws c. 151A, § 1(*r*)(3), as amended through St. 1992, c. 118, § 4, and as here pertinent, defines "remuneration" as "any consideration, whether paid directly or indirectly, including salaries, commissions and bonuses . . . received by an individual . . . (3) as termination, severance or dismissal pay, or as payment in lieu of dismissal notice . . . or as payment for vacation allowance. . . ."

Although the term "severance payments" is not defined by c. 151A, it has been discussed in several decisions in respect to its inclusion within or exclusion from the Legislature's various amendments to the definition of remuneration in § 1(*r*)(3). See *Kalen* v. *Director of Div. of Employment Sec.,* 334 Mass. 503, 504-505 (1956); *Bolta Prods. Div.* v. *Director of the Div. of Employment Sec.,* 356 Mass. 684, 688-690 & n.3(b) (1970); *Itek Corp.* v. *Director of the Div. of Employment Sec.,* 398 Mass. 682, 683-685 (1986).

These cases discuss the many characteristics of severance pay which resemble the present lump sum payment. As considered in *Bolta Prods. Div.* v. *Director of the Div. of Employment Sec.,* 356 Mass. at 689-690, the usual attributes of severance payments are: "The total amount paid was directly related to [the employee's] years of service. It was not subject to limitation or repayment if he obtained other employment before the expiration of three months from [the employer's] termination of his employment. He was permanently severed from his employment . . . with no provision for being called back or rehired. All of the benefits of his employment terminated with the possible exception of vested

---

[3]The employee did not surrender any right to entitlements that he might have under benefit plans unrelated to downsizing, such as "Digital's Pension and SAVE Plans," and any workers' compensation benefits.

pension rights." Compare *Itek Corp.* v. *Director of the Div. of Employment Sec.*, 398 Mass. at 685. There the court concluded that certain payments made to employees, at a time when the definition of remuneration did not include severance pay (see § 1 [*r*][3], as amended by St. 1976, c. 473, § 3), were paid "as a salary continuation plan to employees on inactive status." The court distinguished the payments from severance pay on the basis that the employees "continued to receive the full array of benefits that the company provided to active employees, . . . [T]here was no separation from . . . [the company] during the plan's operation . . . And the salary continuation would cease if the employees were to find other employment within a certain time span."

Although mindful of the similarities between severance pay and Digital's lump sum payment to the employee, we think the fact that the employee would receive nothing unless he signed the broad release of all claims sufficiently significant to remove the payment from the definition of remuneration, and we accept the reasoning found in *Moore* v. *Digital Equipment Corp.*, 868 P.2d 1170 (Colo. App. 1994), a case involving what appears to be an identical or almost identical agreement as well as substantially similar statutory provisions concerning unemployment benefits and severance pay.

While noting the features common to both the lump sum payment in issue and severance pay, the Colorado court found the purpose of the payment worthy of consideration. The court determined: "[T]he written agreement between the parties demonstrates that the employer's primary purpose in making a lump sum payment was, as the referee found, *not* to provide a salary substitute to secure the employee's economic well-being during any period of unemployment. While there is self-serving language to this effect in the agreement that was unilaterally prepared by the employer, had this been the employer's primary purpose for the payment, it would not have been conditioned on the employee's execution of the written release" (emphasis original). *Id*. at 1172.

We find support for our acceptance of the District Court judge's determination of the purpose of the agreement in the fact that the agreement before us also provides that the employee was not to receive the lump sum payment until after the expiration of a waiting period during which he could revoke his acceptance of the terms. Further, we too attach

little significance to the employer's characterization of the agreement as one for "transition financial support." See *Bolta Prods. Div.* v. *Director of the Div. of Employment Sec.*, 356 Mass. at 688.

Having determined the primary purpose of the agreement, the Colorado court next noted, at 868 P.2d at 1173, that "[a]n employee has no obligation, as a part of the services he or she is to provide to the employer, to renounce legal rights possessed by him or her. See, e.g., [Colo. Rev. Stat. § 8-4-110 (1986 Repl.Vol. 3B)]."[4] Consequently, the employee's consideration for the agreement was not services but the release of any claim that he might have against "the employer itself or against described third parties," or, as provided in the agreement before us, its officers, directors, agents, successors, assigns or employees.

As we read *Moore* v. *Digital Equipment Corp.*, 868 P.2d at 1173, the decision is limited to the facts and the terms of the agreement there presented. On that same basis, we agree with the court's conclusion: "Under these circumstances, therefore, in which the payment is not made in return for services previously rendered by the terminated employee, but is in return for a release of claims, and in which the primary purpose of such payment is to obtain such release, we conclude that the payment is not a 'severance allowance' within the meaning of [c. 151 A, § 1(*r*)(3)]." *Ibid.*

*Judgment affirmed.*

---

[4]General Laws c. 151A, §§ 35 and 36, make provision comparable to Colo. Rev. Stat. § 8-4-110 (1986 Repl.Vol. 3B).