Fremont-Smith, J.
This matter is before this Court on the plaintiffs Motion for Judgment on the Pleadings. This action involves an appeal by Trust Insurance Company (“Trust”) from a decision rendered by the Division of Insurance (“Division”) on August 25, 1995 which upheld the actions taken by the Governing Committee of Commonwealth Automobile Reinsurers (“CAR”). Trust contends that the actions taken by CAR constitute rulemaking functions which must be conducted in accordance with the rulemaking procedures outlined in G.L.c. 175, §113H. Trust alleges that CAR did not follow these rulemaking procedures, thus rendering its actions invalid. Accordingly, Trust seeks to have the matter remanded to the Division for further proceedings consistent with the rulemaking requirements set forth in G.L.c. 175, §113H. The Motion for Judgment on the Pleadings is ALLOWED.
FACTS
CAR, a statutorily created entity authorized by G.L.c. 175, §113H, administers the “assigned risk pool” for motor vehicle insurance.[2] Hartford Accident & Indemnity Co. v. Commissioner of Insurance, 407 Mass. 23, 24 (1990); Warner Insurance Co. v. Commissioner of Insurance, 406 Mass 354, 356 n.4 (1990). CAR ensures that motor vehicle insurance will be offered to all of Massachusetts’ licensed drivers. All insurers who write motor vehicle insurance policies in the state are required to be a member of CAR and to be a Servicing Carrier that writes involuntary risks.
Agents or brokers who write motor vehicle insurance and who are unable to obtain a voluntary relationship with an insurance company can apply to CAR for appointment to an involuntary relationship. Agents appointed to such relationships are termed Exclusive Representative Producers (“ERPs"). Insurance companies that enter into such relationships are called Servicing Carriers. CAR has adopted a plan to allocate ERPs based on each Servicing Carrier’s total market share. Carriers which have a smaller share of the ERP market than their share of the total market (“undersubscribed” companies) receive additional ERPs as their applications are approved by CAR.
CAR makes assignments of ERPs to undersubscribed Servicing Carriers on the basis of each Carrier’s “ought to have” share of the ERP market. This share is equivalent to the number of ERP exposures it must service: the actual percentage of the total market multiplied by the sum of all Carriers’ actual ERP exposures.[3]
At a minimum, each Servicing Carrier must service that number of ERP exposures which equals 75% of that Carrier’s “ought to have” share. CAR assigns ERPs to any undersubscribed Carrier that has not reached this level, and will continue to assign ERPs to bring Carriers up to 95% of their “ought to have” share.
CAR has not set an upper level of oversubscription at which point Carriers would be eligible to seek relief, nor has it established any standards or procedures pursuant to which oversubscribed Carriers may be relieved of their excess ERP exposures.
In October 1993, Arnica Mutual Insurance Company (“Arnica”), claiming to be oversubscribed with ERPs, sought relief from CAR’s Governing Committee pursuant to Rule 20 of CAR’s Rules of Operation. In May 1994, the Governing Committee denied Arnica’s request for relief. In June 1994, Arnica appealed the decision of the Committee. In December of the same year, the Hearing Officer assigned to the appeal remanded the matter to CAR.
At this point, Arnica submitted a proposal to CAR to address the issue of oversubscription generally, and to resolve its own oversubscription problem. CAR created an Ad Hoc Committee on Servicing Carrier/ERP Subscription to consider the issues raised by Arnica’s proposal. This proposal was discussed at the February 15, 1995 meeting of the Ad Hoc Committee, attended by Trust, and the Ad Hoc Committee voted to recommend to the Governing Committee that Arnica’s proposal be adopted.
*65 Arnica’s proposal was discussed at the March 15, 1995 Governing Committee meeting. Following discussion and debate, a modified version of the Arnica proposal was adopted “in concept” and the CAR staff was instructed to devise a strategy for implementation, which was to be presented at the April meeting of the Governing Committee. The CAR staff then prepared a “Proposed Procedure— Private Passenger Subscription” to implement the Arnica proposal adopted by the Governing Committee.
At the April 19, 1995 meeting, the Governing Committee discussed the procedure proposed by the CAR staff for implementing Arnica’s proposal. Following discussion and debate, the Private Passenger Methodology (“Methodology”)[4] was unanimously approved by the Governing Committee. The Committee also voted that the Chairman designate a committee or committees to work out the unresolved issues and details necessary for the implementation of the Methodology.
On May 18, 1995, pursuant to Rule 20 of CAR’s Rules of Operation, Trust appealed the decision of the Governing Committee adopting the Methodology as a procedure to be added to the Manual of Administrative Procedures to the Division of Insurance, rather than as a substantive Rule of Operation and/or amendment to the assigned risk plan provided for by c. 175, § 113H. On July 20, 1995, a hearing was held before the Division of Insurance. On August 25, 1995, the Hearing Officer issued his decision dismissing Trust’s appeal and affirming the adoption by CAR’s Governing Committee of the Methodology as part of CAR’s Manual of Administrative Procedures. The present appeal was filed by Trust on September 22, 1995.
The Legislature has authorized CAR to develop and file a Plan of Operation, promulgate rules to implement that Plan and formulate procedures necessary for the operation of CAR. G.L.c. 175, §113H.
Article X of CAR’s Plan of Operation provides as follows:
This plan, as the charter and constitution for CAR, sets forth the framework in which CAR will conduct its affairs. A set of Rules of Operation must also be adopted to assure that CAR functions efficiently and at all times consistent with this Plan. These Rules of Operation must also be adopted to assure that CAR functions efficiently and at all times consistent with this plan. These Rules of Operation shall be prepared by the Governing Committee of by the Commissioner as provided in this Article.
All Rules of Operation specifically required by this Plan and all others necessary for the efficient operation of CAR shall be prepared by the Governing Committee and submitted to the Commissioner for approval. . . The Commissioner shall hold a public hearing on a proposed Rule if a request for such a hearing is made by a Member Company, association of insurance producers or the Attorney General within five days of that party’s receipt of the proposed Rule. A Rule of Operation proposed by the Governing Committee shall become effective either upon the approval of the Commissioner or upon the expiration of thirty days from the time of submission provided that no public hearing has been requested on the Rule and the Commissioner has not previously disapproved the Rule.
Rule 4.A. of CAR’s Rules of Operation provides that the Governing Committee:
[S]hall have the responsibility for the administration of CAR, including the preparation and filing of the Plan and Rules of Operation and the adoption and filing of any amendments to the Rules or Plan of Operation.
Rule 4.C.5. authorizes CAR to “prepare a Manual of Administrative Procedures which shall contain instructions for the statistical recording and reporting of CAR business; auditing and claim review procedures; and other pertinent information.”
The Manual of Administrative Procedures (“Manual”) prepared by CAR is a set of administrative procedures based upon the Rules of Operation promulgated by CAR. The Manual states:
The purpose of the Manual of Administrative Procedures is to provide the detailed instruction needed to operate the Commonwealth Automobile Reinsurers successfully. It supplements the Plan and Rules of Operation but does not add any new policy requirements beyond those contained in the Plan and Rules.
In the proceedings before the Division of Insurance, CAR argued that it has discretion to determine what is a rule, what is a procedure, what requires compliance with rulemaking procedures and what is simply an administerial act. Trust asserts that while CAR has the discretion to promulgate procedural rules as it sees fit, substantive rulemaking must comply with the procedures of Article X, supra, and with the provisions of G.L.c. 175, § 113H(E) which provides:
Before becoming effective... any such plan shall be filed with the commissioner, who shall conduct a public hearing within thirty days to determine whether such plan is consistent with public policy and meets the requirements of this section. At such hearing, insurance companies and any other party having a direct interest shall have an opportunity to be heard . . .
DISCUSSION
The plaintiff Trust is seeking the reversal and remand of an administrative decision by the defendant, Commissioner of the Division of Insurance (“Commissioner”). Review of an administrative decision is generally confined to the record. Pentucket Manor Chronic Hospital, Inc. v. Rate Setting Com., 394 Mass. 233 (1985). G.L.c. 175, §113(H) provides that an appeal shall be on the basis of the record of the proceeding *66 before the commissioner. See G.L.c. 175, §113(H)(E). To the extent that an administrative agency’s decision involves a question of law, it is subject to de novo judicial review. Raytheon Co. v. Director of the Division of Employment Security, 364 Mass. 593 (1974); Itek Corp. v. Director of the Division of Employment Security, 398 Mass. 682, 684 (1986); Ruzicka v. Commissioner of the Department of Employment & Training, 36 Mass.App.Ct. 215, 217 n. 4 (1994). Where an administrative agency has made conclusions of law based on facts presented before it, those conclusions are subject to de novo review. Capezzuto v. State Ballot Law Commission, 407 Mass. 949, 952 (1990).
Trust Insurance contends that the adoption of the Methodology will have a substantial impact upon the insurance industry, affecting the rights and interests of insurers, and is therefore a rule whose provisions should be promulgated in accordance with the rulemaking procedures applicable to CAR.
Actions establishing policies or effecting changes in policies which substantially affect those regulated by an agency are rules which must be implemented in accordance with the pertinent rulemaking requirements. New England Memorial Hospital v. Rate Setting Commission, 394 Mass. 296 (1985). The establishment of rates of reimbursement, price scheduling and eligibility requirements can only be accomplished through the promulgation of rules since all of these actions substantially affect the rights of regulated parties. See, e.g. Massachusetts General Hospital v. Commissioner of Administration, 353 Mass. 369 (1967) (setting of hospital reimbursement rates are rules which must be adopted in accordance with the requisites of G.L.c. 30A); Massachusetts General Hospital v. Commissioner of Public Welfare, 346 Mass. 739 (1964) (rights of reimbursement must be embodied in a rule); Kneeland Liquor, Inc. v. Alcoholic Beverages Control Commission, 345 Mass. 228 (1962) (minimum pricing schedules are rules).[5]
Conversely, directives which only define terms used in a previously promulgated rule and clarify the procedures set forth in that rule are not considered regulations under G.L.c. 30A, §1(5). See Massachusetts General Hospital v. Rate Setting Commission, 371 Mass. 705, 707 (1977). Similarly, agency pronouncements which simply reflect change in internal management are exempt from the requirements of rulemaking, as those actions which are directed to the internal management or operation of the agency or its personnel will be considered procedural. See, e.g., Commonwealth v. Trumble, 396 Mass. 81, 89 (1985). (Guidelines governing the establishment of roadblocks by state police were directed solely to the troopers, instructing them as to the manner in which they were to fulfill their duties, thus the guidelines concerned the “internal management of the State police department and, therefore, were not regulations under G.L.c. 30A and not subject to notice and hearing. Id.)
The Methodology essentially does three things: (1) it provides for the physical redistribution of ERPs when a Servicing Carrier is deemed to be more than 125% oversubscribed; (2) it institutes a weighing factor for ERPs, weighting Code 3 ERP exposures at 1.20 versus all other exposures at 1.00; and (3) it limits a Servicing Carrier’s ability to enter two party agreements with ERPs to only those ERPs who are currently being serviced by a Servicing Carrier that is 110% oversubscribed. These changes do not merely “fill in the details or clear up an ambiguity of an established policy”; rather they “inaugurate a material change of policy” which must be accomplished through rulemaking. Massachusetts General Hospital, 371 Mass. at 707. The Methodology reflects fundamental changes in the way ERPs will be distributed and assigned to Servicing Carriers, and also changes the way subscription levels of Servicing Carriers will be calculated and changes the circumstances under which a Servicing Carrier and an ERP can enter into a two-party agreement.
As noted above, the Methodology thus involves the adoption and institution of new policies which substantially alter the rights and interests of regulated parties, including the plaintiff. The methodology must therefore be adopted in accordance with CAR’s own rulemaking procedures and G.L.c. 175, §113H. And, while the plaintiff did appeal to the Commissioner from CAR’s decision to adopt the Methodology, an appeal is not the legal or functional equivalent of a public hearing, at which evidence may be submitted so as to comprise part of the administrative record on appeal. Under the procedure followed here, the plaintiff was deprived of that opportunity. As the Supreme Judicial Court said in Massachusetts General Hospital, supra, at 707: “Formal presentation by the agency with opportunity for ‘input’ and debate by the persons affected, and deliberate resolution of issues by the officials, may be thought wasteful of time and energy where the agency is intending to fill in the details or clear up an ambiguity of an established policy, rather than to inaugurate a material change of policy.” As the Methodology here “inaugurates a material change of policy,” the plaintiff is entitled to a "formal presentation” with “opportunity for input” under the rulemaking procedures.
ORDER
For the foregoing reasons, this Court hereby ORDERS that the Motion for Judgment on the Pleadings is ALLOWED, and remands this matter to the Division of Insurance for further proceedings consistent with the rulemaking requirements set forth in G.L.c. 175, §113H and Article X of CAR’s Plan of Operation.

 “Assigned risk pool”: the regulatory scheme for providing motor vehicle liability insurance to applicants who are otherwise unable to obtain insurance (the involuntary or residual market) and for apportioning among insurance companies the resulting expenses and losses.

 When calculating ERP subscription levels, all ERP exposures are weighted equally, with none being given added weight because of a higher loss ratio.

 The Subscription Methodology adopted by CAR establishes an upper tolerance level of “ought to have” ERP exposures for Servicing Carriers. Once that level is reached, a Carrier may request relief from CAR. The Methodology provides that when a Carrier attains a level of 125% of more of its “ought to have” ERP exposures, and has exceeded its “ought to have” exposures by 1,000 or more for more than 12 months, that Carrier may seek relief from CAR through the reassignment of ERPs until its subscription level declines to 110% of its “ought to have” exposures.
In addition, the Methodology establishes that different categories of ERPs shall be weighted differently.

 Although CAR is not an administrative agency, it functions in a quasi-administrative capacity. Therefore, administrative law is instructive as guidance in determining when actions must be promulgated by a rule. The Massachusetts Administrative Procedures Act, G.L.c. 30A, §1(5), defines regulation as follows:
Regulation includes the whole or any part of every rule, regulation, standard or other requirement of general application or future effect . . . adopted by an agency to implement or interpret the law enforced or administered by it, but does not include (a) advisory rulings issued under Section eight: or (b) regulations concerning only the internal management or discipline of the adopting agency or any other agency, and not substantially affecting the rights of or the procedures available to the public or that portion of the public affected by the agency’s activities ...